· LALANNE'S HEIRS *vs.* MOREAU.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

EASTERN DIST.
*May*, 1839.

LALANNE'S HEIRS
*vs.*
MOREAU.

13L 431
44 420
13L 431
46 1267
13L 431·
47 166,
47 890

13 431
115 424

13 431
119 703

13 431
122 898

13 431
125 508

It is not necessary that the appointment of appraisers should form a part of the decree, ordering the sale of property inherited by minors, to pay the debts of the succession; or, that their names be mentioned in the order. Their appointment may be entered, afterwards, on the minutes of the court. When the substantial requisites of the law are complied with, it will suffice.

Where there is a formal decree of the Court of Probates, recognizing the necessity of selling property inherited by minors, for the payment of the debts of the succession, giving an opportunity to the attorney of absent heirs to show, that, in fact, no such necessity existed, the purchaser is not bound to look beyond this.

No alienations of minor's property can take place, without the advice and consent of a family meeting, and upon sufficient cause shown.

The decree of the Court of Probates upon the recommendation of a family meeting, for the sale of property inherited by minors, to pay the debts of the ancestor, is so purely *in rem*, and against the property, independently of the persons, that the sale made under it extinguishes all the mortgages, existing in the name of the owner on the property.

Sales directed by the Court of Probates, are judicial sales to all intents and purposes, and the purchaser is protected by the decree ordering them.

It is settled in most of the states of the union, that a purchaser under a decree of the Orphan's Court, is bound to look to the jurisdiction; but that the truth of the record, concerning matters within that jurisdiction, cannot be disputed. If the facts necessary to give the court jurisdiction, appear on the face of the proceedings, the purchaser need not look beyond the decree.

This is a petitory action, in which the plaintiffs allege that they are the sole heirs of their late mother, Louise Boune Lalanne, f. w. c., and inherited from her a house and lot, situated in the faubourg Marigny, and now in the possession and claimed by the defendant, as owner. The defendant · sets up title to the premises, in virtue of a probate sale, made in pursuance of the advice of a family meeting and decree of

EASTERN DIST.
May, 1839.

LALANNE'S HEIRS
vs.
MOREAU.

the Probate Court thereon, to pay the debts of the succession of the deceased ancestor.

The plaintiffs endeavor to show several vices of nullity, in the proceedings by which the property was sold, and pray that the sale be annulled, and the property decreed to them, as the true and lawful owners.

The cause was submitted to a jury, who returned a verdict for the plaintiffs for two-fifths of the house and lot; and from judgment rendered thereon, the defendant appealed.

*Roselius* and *Elwyn*, for the plaintiffs.

*D. Seghers* and *Canon*, for the defendant.

*Rost, J.*, delivered the opinion of the court.

The petitioners allege that they are the children and only heirs of Louise Boune Lalanne, who departed this life in May, 1816, and who was at the time of her death the owner of a town lot, now in possession of the defendant. That they were both minors when their mother died, and have never been legally divested of their title to said lot. They pray judgment against the defendant, and that he be made to pay them damages, at the rate of twenty dollars per month, during the whole time of his possession. The plaintiffs subsequently filed a supplementary petition, showing that one undivided half of the lot in controversy, belonged to a succession, which the defendant was administering as executor, and prayed that the said defendant might be cited in that capacity. It being subsequently stated to the court, that another heir of B. Lalanne existed, and was a minor, a curator, *ad hoc*, was appointed to represent him, and the said curator intervened.

The defendant, in his own right, and as executor, denied the heirship of the plaintiffs; set up title by purchase, from the syndics of Theodore Bauduc, on the 2d of December, 1830, and stated that the syndics had since been discharged, but that certain creditors of the insolvent, whom he named, had received the price paid by him for the lot, by virtue of a

special mortgage which they held upon it. He prayed that the said mortgage creditors might be cited in warranty, and in case of eviction, that they might be compelled to refund to him the price paid.

The warrantors denied the heirship of the plaintiffs, and all the allegations of the petition and supplemental petition, and of the call in warranty. They further denied having received the proceeds of the sale of the lot, the larger part thereof having been applied to the payment of the privileged debts of the insolvent. The case was submitted to a jury, who gave a verdict in favor of the plaintiffs for two-sevenths of the property claimed, and after an unsuccessful attempt on the part of the defendant to have said verdict set aside, judgment was rendered in conformity therewith, and the defendant appealed.

The plaintiffs rest their case upon the following informalities, alleged to exist in the administration of their mother's succession :

1st. That the family meeting who advised the sale, was assembled without giving three days previous notice to the members of it.

2d. That the under tutor and curator, *ad lites*, did not take the oath required by law, till eleven days after the deliberations of the family meeting.

3d. That the order to sell, and the sale, were made before any surety had been given by the tutor and curator.

4th. That no person was specially named and appointed by the court, to appraise the property.

The opinion which we have formed, makes it necessary that the last informality alleged by the plaintiffs, should be first noticed : an order was made by the court, that appraisers should be appointed, but their names were left in blank, before the sale. However, B. Montreuil and Landon, were sworn in open court as appraisers, and it is stated in the affidavit, that they had been appointed by the court to act as such. They made the appraisement in presence of the register of wills, and in due form of law ; and the oath, as well as the appraisement, are of record in the Probate Court.

It is not necessary that the appointment of appraisers should form a part of the decree, ordering the sale of property inherited by minors, to pay the debts of the succession, or that their names be men-

## 434    CASES IN THE SUPREME COURT

Under these circumstances, all the substantial requisites of the law have been complied with, and the fact that the names of the appraisers were left in blank, in the order of the judge, is a mere clerical omission which could be supplied, *nunc pro tunc*, at any subsequent time, and which we feel ourselves authorized to supply even now; it was not necessary that the appointment of appraisers should form a part of the decree ordering the sale; it might have been ordered afterwards on the minutes of the court.

tioned in the order. Their appointment may be entered afterwards on the minutes of the court. When the substantial requisites of the law are complied with, it will suffice.

When there is a formal decree of the Court of Probates, recognizing the necessity of selling property inherited by minors, for the payment of the debts of the succession, giving an opportunity to the attorney of absent heirs, to show, that in fact, no such necessity existed; the purchaser is not bound to look beyond this.

The other informalities alleged, are all anterior to the decree of the court ordering the sale to take place, and with respect to them, so far as the purchaser is concerned, this case is not to be distinguished from that of *Michel's Heirs* vs. *Michel's Curator and others;* 11 *Louisiana Reports,* 149. In that case the court said : " We have a formal decree of the Court of Probates, recognizing the necessity of the sale for the payment of the debts, and preceded by an opportunity on the part of the attorney for absent heirs, to show that, in fact, no such necessity existed. The purchaser is not bound, in our opinion, to look beyond this."

In the present instance, the necessity of the sale was recognized by the family meeting, and it appearing in evidence before them, that there were debts or charges of the succession unsettled, they advised that the lot in controversy should be sold, and that one-third of the proceeds of the sale should be for cash, in order to pay them. The under tutor ratified all the proceedings of the family meeting, by joining with the tutor and curator, *ad bona,* in a petition to the court, praying that, whereas they both deemed the sale of indispensable necessity, the same might be ordered to take place in conformity with the advice of the family meeting. The court made the decree, as prayed for, and the sale under which the defendant claims, took place. We are of opinion, that in this case, as in that of Michel's Heirs, this decree had the force and effect of a judgment, beyond which the purchaser is not bound to look.

Whatever might have been the effect of the authorization of the judge, under the former laws of the country, the radi-

cal changes made in these laws by subsequent legislation, fully justify the conclusion to which we have come.   Under the jurisprudence of Spain, the act of the judge in cases of this kind, was a mere authorization given to the tutor to sell the minor's property, upon an *exparte statement*, made by him, and taken for true.   A *contestatio litis*, as to the propriety or necessity of selling, could never arise.   The tutor appeared alone before the judge, and when the authorization prayed for was granted, no one had capacity to appeal from it, however injurious it might be to the minors.   Under such a state of things, it may have been wise to provide, that the minor should have four years, after he had attained the age of majority, to contest sales of his property, made to his prejudice during his minority, with or without the authorization of the judge; but our legislative enactments, in giving greater security to minors, that their property shall not be alienated without necessity, have also given greater force to the decrees of courts, under the faith of which third persons acquire it, when it is sold, and have virtually repealed the former laws.

Family meetings were first introduced by the code of 1808, and since that time no alienation of minor's property can take place without their advice, and upon sufficient cause shown.   Under tutors, also, have since been appointed in all cases of tutorship, and it is made their duty to attend the *deliberations* of family meetings whenever they are convoked for that purpose, and to approve or disapprove their proceedings.   When the under tutor disapproves the advice to sell, given by the family meeting, a *contestatio litis* arises between him and the tutor; and the court, after hearing them, decides whether the sale is necessary, and adjudicates upon all matters at issue between them.   If either party is dissatisfied with the judgment, he is entitled to an appeal, as in all other civil cases.   Upon that appeal, the merits of the opposition are again examined, and the decision of the appellate court is final upon the controversy.   When it is given in favor of the tutor, it is no longer a simple *exparte* authorization to him to sell ; it is a final judgment *in rem,*

EASTERN DIST.
*May*, 1839.

LALANNE'S HEIRS
*vs.*
MOREAU.

The decree of the Court of Probates upon the recommendation of a family meeting for the sale of property inherited by minors to pay the debts of the ancestor, is so purely *in rem* and against the persons, that the sale made under it extinguishes all the mortgages existing in the name of the owner on the property.

Sales directed by the Court of Probates are judicial sales to all intents and purposes, and the purchaser is protected by the decree ordering them.

which condemns the property to be sold, and if, after its rendition, it became the interest of the tutor not to sell, and he failed to do so, the under tutor would have the right to require from him the specific performance of the decree.

The decree of the Court of Probates, in such cases, is so purely *in rem*, and against the property, independently of the person, that the sale made under it extinguishes all the mortgages existing in the name of the owner on the property sold.

It matters not, as was well said by this court, in the case of Michel's Heirs, " whether the attorney of absent heirs, or in this case, the under tutor, made any formal opposition. When the necessity of the sale was manifest to him, it would have been doing a vain thing, and perhaps, prejudicial to the estate." The force and effect of a decree, cannot be affected by the manner in which the suit was conducted by the parties litigant. In this case, also, there were debts or charges to pay, and it might be said that there was, properly speaking, no property belonging to the minors, until they were satisfied. But we place our decision on the broad ground, that sales directed or authorized by Courts of Probates, are judicial sales to all legal intents and purposes. It was so decided by this court in the case already alluded to, and the principle is recognized in that of *Pintard* vs. *Deyris*, 3 *Martin*, *N. S.*, 32. Article 114, page 366, of the old Civil Code, also seems to recognize it, and it is a textual provision of the Louisiana Code, included in article 1863.

The necessity and wisdom of such a rule of property, has long been felt and acknowledged in the most important states of this Union, and none is better settled by the decisions of their courts. They all maintain, that a purchaser under a decree of the Orphans Court, is bound to look to the jurisdiction, but that the truth of the record concerning matters within that jurisdiction, cannot be disputed. That the decree of the court is to be received as conclusive evidence, not to be impeached from within, and like all other acts of the highest judicial authority, impeachable only from without ; and that a judgment, decree, sentence, or order, passed

by a competent jurisdiction, which creates or changes a title, or any interest in an estate, is not only final as to the parties themselves, and all claiming under them, but furnishes conclusive evidence to all mankind, that the right or interest belongs to the party to whom the court adjudged it. See *M'Pherson* vs. *Conliff and others*, 11 *Sergeant and Rawle*, 434. *Hacket and Wife* vs. *Philips*, 2d *Sergeant and Rawle*, 7. *Commonwealth* vs. *Greenwood Turnpike Company*, 1 *Connecticut Reports*, 17.

The Supreme Court of the United States came to the same conclusion, in the case of *Thompson* vs. *Tolmie*, 2d *Peters*, 166. This was an action instituted on account of some alleged informalities in a sale of minor's property, made by order of court. The Supreme Court said : " These proceedings were brought before the court below, collaterally, and are by no means subject to all the exceptions which might be taken on a direct appeal. They may well be considered as judicial proceedings : they were commenced in a court of justice, carried on under the supervising power of the court, and to receive its final ratification. The general and well settled rule of law, in such cases, is, that when the proceedings are collaterally drawn into question, and it appears upon the face of them, that the subject matter was within the jurisdiction of the court, they are voidable only ; the errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court to set them aside, or in an appellate court." The same high authority added in conclusion, that " if purchasers were responsible for the mistakes of the court, in point of fact, after they had adjudicated upon the facts and acted upon them, such sales would be snares for honest men."

These opinions are so consonant with justice and sound morality, that, in case of doubt, we would not hesitate to adopt them ; but we are satisfied that our own laws, do not authorize a different conclusion.

Considering that the decree of the Court of Probates, ordering the sale of the lot in controversy, was a judgment rendered by a competent court, beyond which the defendant

EASTERN DIST.

*May*, 1839.

LALANNE'S HEIRS
*vs.*
MOREAU.

It is settled in most of the states of the Union, that a purchaser under a decree of the Orphans Court, is bound to look to the jurisdiction ; but that the truth of the record concerning matters within that jurisdiction, cannot be disputed. If the facts necessary to give the court jurisdiction, appear on the face of the proceedings, the purchaser need not look beyond the decree.

EASTERN DIST.  is not bound to trace his title, and considering, further, that
*May,* 1839.  no material informality has been shown in the proceedings
VIGERS ET AL.  which followed the said decree, we are of opinion that the
*vs.*
KILSHAW.  judgment of the District Court must be reversed, and the
defendant maintained in his possession.

It is, therefore, ordered and adjudged, that the judgment
of the District Court be avoided and reversed, and that there
be judgment in favor of the defendant, with costs in both
courts.