JOHN C. DELAVIGNE, Syndic of his Creditors, *v.* LOUIS URBAIN GAIEN-
NIE and others.

A Recorder of Mortgages cannot be compelled to erase a mortgage without making
the mortgagee a party to the proceedings, unless a judgment ordering the erasure
has been rendered contradictorily with the latter.

Where a mortgage has been erased in pursuance of a judgment of a court of compe-
tent jurisdiction, rights acquired by subsequent mortgagees, before any proceedings
to annul the judgment, will not be affected by any illegallity in it. Third persons
are not bound to look beyond the judgment, which, if rendered by a court of compe-
tent jurisdiction, must have its full effect, and can only be annulled by a direct ac-
tion. *Aliter,* as to the parties themselves, or their *ayans-cause* with notice; as to
them, the rights of a mortgagee cannot be affected by any order or decree in a case
*to* which he was not a party.

APPEAL from the District Court of the First District, *Buchan-
an,* J.

SIMON, J. It appears from the record that a judgment having
been obtained by the plaintiff against the defendant Gaiennié, on
the 2d of January, 1838, and having been duly recorded in the
office of the Recorder of Mortgages, an execution was issued
thereon, which was levied on *Gaiennié's* property, which property
was sold on a credit of twelve months, in consequence of which a
bond was furnished by the purchaser for the benefit of the judg-
mentcreditor. After the taking of said bond, Gaiennié, on filing
the certificate of the sheriff showing how the proceeds of the pro-
perty seized and sold, and the bonds given by the purchaser had
been disposed of in satisfaction of said judgment, moved the
court for an order cancelling the judicial mortgage existing on
the rest of his property, whereupon, on the 30th of August,
1839, a judgment was rendered, ordering that *the said judicial
mortgage resulting from the recording of said judgment be raised
and cancelled.* It does not appear that the judgment creditor
was even notified of the motion. The bond due to the plain-
tiff not having been paid at maturity, an execution was issued
thereon, the same property was resold, and only produced an
amount which went to the satisfaction of the costs.

It further appears from a certificate of the Recorder of Mort-
gages that, in consequence of said judgment, and on the filing in
his office of a certificate signed by the deputy clerk of the Dis-

trict Court, on the 2d of September, 1839, the judicial mortgage in question *was cancelled and annulled from the records in his office;* and that, on the 27th of the same month, an act of mortgage was executed by Gaiennié upon his property, in favor of the Citizens Bank of Louisiana, to secure a loan made to him; in which act, the judicial mortgage in question is not in any manner stated or alluded to as existing on the property mortgaged, nor is it mentioned in the certificate of the Recorder of Mortgages accompanying the act.

The object of the present action is to reinstate the judicial mortgage against the property of the defendant Gaiennié, as though the same had never been erased, and to obtain a judgment that the petitioner be decreed to be an anterior mortgagee to the Citizens Bank, for the amount of his judgment, principal and interest.

The judge *a quo* being of opinion that this action, being in its effect an action of nullity or rescission of the judgment rendered on the 30th of August, 1839, said judgment cannot have any legal effect against a person who was no party to the *ex parte* order obtained on the motion of Gaiennié, ordered the judicial mortgage to be reinstated in the manner prayed for by the plaintiff; and from this judgment, the Citizens Bank has appealed.

It is perfectly clear, nay, it is even conceded by the appellants' counsel that the judgment rendered on the *ex parte* motion of the judgment debtor, was illegal and irregular, and that the Recorder of Mortgages could not have been compelled to cancel the judgment recorded, without the privity of the party who had obtained it, or unless said judgment had been rendered contradictorily with the judgment creditor. This has always been the uniform course of our jurisprudence. 2 La. 489. 4 Ib. 17. 6 Ib. 454. 5 Ib. 330. See also the case of *French* v. *Prieur*, decided in December, 1843 (6 Rob. 299). In the case of *Leverich* v. *Prieur*, decided in June last, in which this doctrine was again reviewed, we held not only that " a proceeding of this nature ought to be carried on contradictorily with those against whom it is intended to be used ;" but we said also, " that the Recorder of Mortgages was not bound, *ex officio*, to make the erasure of

mortgages, and to expunge them from his books, on being informed of the circumstances under which they were extinguished ; and that, although he may perhaps do so, if he is certain of the facts, it will be at his peril, and he will not be protected against the consequences of his act, if improperly done." Here, the mortgage was erased by virtue of a judgment illegally rendered; it is true ; but such judgment, though subject to an action of nullity, had been rendered by a court of competent jurisdiction, and the question occurs again : Can the right acquired by the appellants before the judgment was sought to be annulled, be affected by the irregularities existing in the previous proceedings ; and were they bound to look beyond the judgment by which the Recorder of Mortgages was authorized to cancel the appellee's judicial mortgage ?

This question is not new in our jurisprudence, and since the case of *Casanova's Heirs* v. *Avegno* (9 La. 195), we have uniformly held, in substance, that a third party, upon whose rights a judgment is to bear as a protection, is not bound to look beyond said judgment, which, if rendered by a court of competent jurisdiction, must have its full force and effect, and cannot be invalidated or annulled but by a direct action of nullity. 11 La. 149. 13 La. 434. 14 La. 146, 468. 17 La. 198. In the case of *Leblanc* v. *His Creditors* (16 La. 124), the judgment ordering the release of the minor's mortgage, was declared binding with regard to the rights of the subsequent mortgage creditors, notwithstanding the alleged illegalities and irregularities sufficient to annul it ; and this doctrine was again fully reviewed in the cases of *Guesnon* v. *His Creditors, Rhodes et al.* v. *The Union Bank,* and *Dumas, Ex'r,* v. *Guesnon,* reported in 7 Robinson, in which last case, we said that " *mortgages acquired by third persons under the faith and protection of a decree of a court of competent jurisdiction, which had not then been annulled or in any manner attacked, should have their full effect, and should be satisfied in preference to the mortgage previously and perhaps illegally cancelled.*"

The appellee's counsel, however, has mainly relied on the case of *Dreux* v. *Ducournau* (5 Mart. 625), to sustain his position, that the appellants were bound to take notice of the irre-

gularities existing in the proceedings had previous to the judg-
ment, and that they could acquire no right under a judgment
tainted with such nullities, and the case referred to appears to
have been the basis of the judgment appealed from; but al-
though it was intimated, and even said in that case, that the
right of the mortgage creditor ought not to be affected by the
order or decree by virtue of which the mortgage was cancelled,
as he was not made a party to the action, the point which this
case presents was not then at issue contradictorily with a third
party contending for mortgage rights subsequently acquired;
it was with the purchaser of the property mortgaged, who re-
fused to pay the price, on account of the danger of eviction re-
sulting from the former existence of the old mortgage, and from
its having been, within his knowledge, illegally cancelled. This
court said: "The defendant, *having knowledge of this*, could not
have paid the whole amount promised by him for the planta-
tion, with safety, and ought not, in equity, to be compelled to
do it, without being well secured against the mortgagee's
claim." This doctrine is not adverse to the one subsequently
and repeatedly recognized by this court, with regard to innocent
third persons, for, with regard to the parties themselves, or their
*ayans-cause* with notice, the right of the mortgagee cannot
clearly be affected by any order or decree rendered in a case in
which he was not made a party.

The jurisprudence of the country from which we have derived
the greatest part of our laws upon this important subject, ap-
pears to be concordant with ours. See Sirey, vol. 11, part 2, p.
472, in which it was decided that: " *Lorsqu' une hypothéque a été
rayée, le jugement ou arrêt qui en ordonne le rétablissement ne peut
lui rendre sa première date ; tout ce qui a été fait dans l'intervalle
de la radiation au rétablissement est bien fait.*" 12 Ib. part 2, 370.
See also Duranton, vol. 20, Nos. 202 and 203, in which the com-
mentator says: " *Mais ni le recours en cassation, ni la requête ci-
vile ne suspendent l'exécution des jugemens, encore que le pourvoi
eût été admis ou que la requête civile eût été reçue, tant que le juge-
ment ou l'arrêt n'aurait pas été cassé ou rétracté ; par consequent
l'inscription peut être rayée. Cela peut sans donte devenir funeste*

*au créancier, dans le cas où, en définitive, il gagnerait sa cause, car l'inscription ne serait point rétabli à sa date primitive par rapport aux tiers qui auraient, depuis la radiation, pris des inscriptions sur les mêmes biens ; autrement le principe de la publicité serait violé dans ses conséquences.*" And see *Paillet, Manuel de Droit*, on art. 2157, s. 6. Under our laws, the principle of publicity of mortgages is equally important and inviolable ; it is the basis upon which the rights of mortgage creditors rest, and the source from which they are derived (C. C. 3297, 3317) ; and were we to recognize that, with regard to third persons, strangers to anterior judicial proceedings, erasures of mortgages, apparently legal, and sanctioned by a judgment of a court of competent jurisdiction, can be enquired into and successfully disputed ; and that such mortgages can be *reinstated* with all their previous and anterior effects, there would result the greatest confusion in our system of mortgages ; no reliance could be placed on the certificates of their recorders ; no man would dare to transact any business in which this contract would be the basis of the transaction ; and our laws upon this subject, instead of being a protection to honesty, and a beacon to our citizens in one of their most ordinary transactions of life, would be used as means by which frauds could be successfully practiced, or as snares to the unconscious and unwary. We cannot sanction the doctrine adopted by the judgment appealed from, by which, as Duranton says, the principle of the publicity of mortgages is violated in its consequences ; and we conclude that the judge *a quo* erred in reinstating the plaintiff's judicial mortgage, in its effect against the rights acquired, since its erasure, by the appellants.

With regard to the defendant Gaiennié, the judgment appealed from must stand, and the mortgage be reinstated. It is true he has not appealed ; but had he thought proper to do so, it is clear that, as to him, the erasure of the plaintiff's mortgage, being illegal and irregular, cannot affect the rights of the latter. The distinction is a very obvious one, recognized by the authorities above quoted.

It is, therefore, ordered and decreed, that the judgment of the District Court, with regard to the appellants, be annulled

and reversed, and that the plaintiff's demand, as to them, be rejected and dismissed, with costs in both courts.

*Delavigne*, plaintiff, *pro se.*

*Denis* and *Pitot*, for the appellants.