Ldsley, J.
The plaintiff, who is the payee and holder of the first of the set oí a foreign bill of exchange, duly protested for non-acceptance, with notice to the drawers, the defendants in this suit, claims from them the amount of it, 'with damages and interest.
The answer is a general denial, and there is also a special defense.
The action was dismissed by the Court below, because the third bill of the set was not produced or accounted for by the plaintiff.
The doctrine upon which the decision was rendered is, when applied to a state of facts, such as that presented in the case of Wells v. Whitehead, 15 Wend. 527, the correct one on principle ; and, if in this case it could bo properly applied, it would bo unnecessary to examine the other issues raised.
The plaintiff produces the first bill of the set -of oxchange, duly protested for non-acceptance by the drawee, with notice to the drawers ; and this, upon the authority of Downes v. Church, 13 Peters, 205, establishes a prima facie title in him as the payee, which, however, may be displaced by the defendants, if they can show that the holder of any other of tlio set may recover on it.
This is a matter of defense, as the law will not presume that the other bills of the set have been negotiated to other persons, and the defendants, therefore, on the trial of the case in the lower Court, showed that the third bill of the set (a copy of which, with the protest annexed, is ip tho record) was the first one protested for non-acceptance.
As the third bill is out, and purports to bear the endorsement of the payee, the plaintiff in this suit, he cannot maintain his action without producing or accounting for this third part, or making satisfactory proof that the payment to him of the bill declared upon-will, in accordance with its tenor, exonerate the defendant from all legal .liability hereafter to any holder of the other bill.
It is proved, and admitted by the defendants, that the plaintiff never saw the third bill, and that his name endorsed on it ig a forgery. Now, as a forged endorsement of a negotiable bill passes no title to it, even to an innocent endorsee (see Jackson v. The Commercial Bank of New Orleans. 2 Rob. 129, and Dick v. Leverich, 11 Rob. 173), and no holder of this third bill could recover the amount of it from the drawers, without alleging and proving the payee’s endorsement, the defendants, therefore, can have nothing to apprehend from any claim which a holder of it might hereafter assert; particulary, as they allege in their answer that the bill was overdue as soon as the first protest was made.
It is a well-established principle of law, that an action can only be maintained on notes or obligations, by those in whom the legal title is vested ; but, in the prreseut case, with proof in the record that there is no endorsement on it by the payee, the plaintiff has a standing in Court, and his action upon the first bill of the sot should not, for the reasons assigned by the Court, have been di-missed.
The question to be determined in this case is, whethe the plaintiff, who is the payee, for value, of the bill of exchange in suit, duly protested for non-acceptance, with notice, can be affected by an agreement in regard to the bill between the drawers of it, the defendants, and a third person, *19 who held the mere possession of it, without any transfer or endorsement from or under the payee ?
To solve this question, as it is here presented, it is necessary to advert' to the principal facts which give rise to it. The plaintiff, -the Abbé Fol-tier, received tli efirsl and second bills of the set from one Eugene Darolles, who purchased it from the drawers, and caused it to be made payable to the order of the Abbé Foltier, whose funds were invested in it, under the following circumstances : Darolles was to forward from New Iberia to New Orleans, and there to sell sixty bales of cotton for the Abbé, and to transmit the proceeds of sale to the Abbé’s brother in France. Being, however, unable, from an uncontrollable cause, to attend to it, Dr. Darolles, his son, undertook the business, and effected a sale of the cotton ; but, deeming his father, who was in the city of New Orleans, tho chosen friendly agent of tho Abbé, and the proper person to terminate the transaction, he placed the proceeds of the sale in his hands, instead of depositing them with some designated person in the city, according to the Abbé’s request. At the earliest practicable moment, the doctor informed the Abbé of the disposition ho had made of the fund, and that his father had invested the Abbé’s money for his account in a* bill of exchange. Owing to the difficulty of passing through the military lines, it was only some time afterwards that tho Abbé obtained an interview with Darolles, who confirmed the statement of his.son, as to the receipt by him of the Abbé’s money, and the purchasing for him and in his name, from the defendants, the bill of exchange now in suit; and, as corroborative thereof, Darolles exhibited to the Abbé his memorandum book, wherein the whole transaction was noted, and placed in his hands tho first and second bills of die set, tho third being, as Darolles said, in his trunk, to be delivered afterwards.
The plaintiff and defendants being, as drawers and payee of a bill of exchange, the original parties to it, the consideration of it would, under the commercial law, bo a fair subject of inquiry; but the defense does not rest upon that, as the drawers received full.value for the bill.
It grows out of an agreement in relation to it between them and Darolles, who had received from them seven thousand dollars, to be invested by him in the-purchase, at Attakapas, of cotton and sugar, on joint account.
The defendants having but a casual acquaintance with Darolles, it was agreed between him and them that they should retain the bill in their possession, by way of collateral security; but upon Darolle’s representation, that the bill would be useful to him in his operations in the interior, the defendants permitted him to hold it, with the understanding, however, that he was not to part with it till they received sufficient produce to cover it.
The defendants have sued Darolles, to compel him to refund their money received by him, and in their petition in that suit, which is still pending in tnis Court, they aver that Darolles entirely failed to invest the fund placed by them in his hands; and they now, as a defense in this suit, say that the bill of exchange in controversy is the property of Darolles, and not that of the Abbé, and that it is subject to their claim, of which, previous to the Abbé’s receiving it, he was well aware, and also that they had ordered it to" be protested.
*20 A careful examination of the evidence in the record has convinced us that the bill was bought by Darolles, with the Abbé’s money and for his use.
Nothing shows that he was conusant of any agreement, in regard to it, made with the defendants by Darolles, and as the Abbé was no partj' thereto, his right to claim the contents of the bill is incontrovertible.
Had the defendants a valid, defense to oppose to the plaintiff’s action, the intimation or notice by them, given to him, that they had ordered it to bo protested, might be properly considered; but, satisfied, as the plaintiff was, that the defendants had received his money as the consideration of the bill, and that they had, by making him the payee of it, put the title to it in him, ho may well have supposed that, if the drawees would not accept it, tho drawers, who were solvent, would be bound, after protest and notice to them, to pay it.
But, what is the nature of tho defendant’s claim to, or upon the bill? Is it one of ownership, or a lien by way of privilege? The bill being payable to the plaintiff’s order the title to it is in him, and, to divest him of it. a transfer from him or his endorsement would be necessary.
As a lien, by way of collateral security or a pawn, the bill 'endorsed by the payee should have been delivered to the pledgee, as delivery is of the essence of that species of contract. See act of 1855, No. 287, $ 1; 8 M. E. 57; 17 La. 185, 428; 2 E. 277; 2 A. 338.
It was certainly in the power of the drawers of the bill, -when confiding their money to Darolles, to impose upon him their own terms and conditions. Why then was the Abbé, and not Darolles, made the payee of the bill, and why did they not insist on the delivery of it to them?
It is very apparent, from this incautiousness on the part of the defendants, that they attached but little importance to the bill as collateral security for their money advanced to Darolles to invest, on joint account, in staple products. In their suit against Darolles, for the recovery of their fund, no allusion is made in their pleadings to this collateral security, and the remittitur for the amount of the bill in the body of the judgment, is so evidently an afterthought, as to render it unworthy of notice; and no greater weight can be attached to tho entries in their books, which were improperly received as evidence for the defendants. See Article O. O. 2244.
The main reliance of tho defendants to defeat the plaintiff’s action is placing the title to the bill, not in the Abbé, but in Darolles, and to this end they direct our attention to the evidence given by the plaintiff in their suit against Darolles. Our interpretation of this evidence, which we reach, not from isolated phrases, but from its whole tenor, differs altogether from that put upon it by the defendants. It appears that the proceeds of the Abbé’s cotton, exceeded in amount the sum paid for the bill, and to obviate all difficulty in a settlement with the Darolles, tho Abbé was willing, if the bill was paid, to grant a full acquittance for the whole. The case of Cannon, v. Calhoun, 10 An. 460, referred to by tho defendants, is very different from this one in which the jffaintiff’s title to the bill is patent upon its face, whilst in the case cited, the note sued on was specially endorsed, not to the plaintiff, but to another person, and. *21 tliis would have been the position of Darolles, had ho instituted a suit against the defendants.
The plaintiff is the legal holder for value of the bill drawn by the defendants, and his equity is greater than theirs, and their defense to his action cannot therefore prevail. “Where the loss has fallen there itmust be,” is an axiom of the law, its. application, however, by the defendants, should have been made to their own condition, and not to that of the plaintiff.
The plaintiff is entitled to a judgment for the amount of the bill, twenty thousand francs, or the admitted equivalent in dollars therefor, (3.50 francs per dollar) say five thousand seven hundred and fourteen dollars and twenty-five cents, with damages, interest and costs.
It is therefore, ordered, adjudged and decreed, that the judgment of the District Court be ahnulled, avoided and reversed.
It is further ordered, adjudged and decreed, that the plaintiff, Eugene Jules Foltier, do recover from, and have judgment against the defendants, the commercial firm of Schroder & Schrieber, and against the individual members of the said firm, Antony Schroder and Christian . Schrieber in solido, for the sum. of twenty thousand francs (20,000f.) or the admitted equivalent therefor in United States money, (viz: 3.50 francs per dollar) say five thousand -seven hundred and fourteen dollars and twenty-five cents, and as damages ten dollars upon the hundred dollars, upon the principal sum, above stated, with five per cent, interest upon the aggregate amount of the principal sum, and the damages thereon, from the seventh day of September, eighteen hundred and sixty-four, until paid. It is further ordered, that the defendants and appellees pay all costs in both Courts.