（64 South. 380.)

No. 19,811.

BECNEL et al. v. LOUISIANA CYPRESS LUMBER CO.

(March 17, 1913. Rehearing Denied Jan. 19, 1914. On the Merits, Feb. 16, 1914.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. APPEAL AND ERROR (§ 640*)—DISMISSAL—TRANSCRIPT.

It is the duty of the clerk of the district court to make up the transcript, and where counsel for the appellant does not interfere with him in any way, or give instructions as to what shall be included therein, and the clerk fails to make up the transcript properly, the appeal will not be dismissed, but the clerk will be ordered to make and forward to this court a proper transcript.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2788, 2829; Dec. Dig. § 640.*]

2. APPEAL AND ERROR (§ 640*)—DISMISSAL—INCOMPLETE TRANSCRIPT.

If the clerk of the lower court certifies that the transcript is complete, the appeal will not be dismissed, if it should turn out that it is not complete, because to do so would penalize the appellant for the error of the clerk.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2788, 2829; Dec. Dig. § 640.*]

On the Merits.

3. MINORS—PROPERTY—PRIVATE SALE.

The purposes of Act No. 25, 1878, p. 47, are to authorize the sale of a minor's property, *held* in indivision with another, at private sale, and to dispense with the judicial partition provided for in the Code. Duruty v. Musacchia, 42 La. Ann. 357, 7 South. 555; Bruhn v. Association, 42 La. Ann. 481, 7 South. 556.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 84; Dec. Dig. § 38.*]

4. MINORS — PROPERTY — FAMILY MEETING — PRIVATE SALE—HOMOLOGATION.

It is the duty of the family meeting, convoked to deliberate upon the proposed private sale of a minor's property held in indivision with another, to consider all questions touching the advantage of such sale; and the homologation thereof by the court is conclusive. Carrollton Land Co. v. Eureka Homestead, 119 La. 692, 44 South. 434; Dauterive v. Shaw, 47 La. Ann. 882, 17 South. 345.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 85–89; Dec. Dig. § 39.*]

5. TUTORS—UNDERTUTOR—VACATION OF OFFICE.

An undertutor who removes from one parish to another does not vacate his office by such removal. Civ. Code, art. 306.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 78–85; Dec. Dig. § 24.*]

6. MINORS—PROPERTY—PRIVATE SALE—RIGHT TO PURCHASE.

Under Act No. 25, 1878, p. 47, the whole of the property had to be sold. Each co-owner, including the tutor of the minor, had to appear as a party to the act. The tutor could only sell the minor's interest. Act No. 50, 1912, p. 59, authorizes a co-owner to purchase the minor's interest.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 85–91; Dec. Dig. §§ 39, 40.*]

**7. TUTORS—SALE OF PROPERTY.**

A tutor may, on his· own responsibility, act by an attorney in fact, in places distant from his residence. Civ. Code, art. 351.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 99, 100; Dec. Dig. § 28.*]

*(Additional Syllabus by Editorial Staff.)*

**8. MINORS—PROPERTY—SALE—RIGHTS OF PURCHASER.**

It is not incumbent upon the purchaser of property at private sale, under an order of court homologating the proceedings had pursuant to Act No. 25 of 1878, authorizing the sale of property of minors to effect a partition on recommendation of a family meeting, that he follow the purchase price paid by him and see that the tutrix pays it over to the minors.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 92; Dec. Dig. § 41.*]

Appeal from Twenty-Eighth Judicial District Court, Parish of St. John the Baptist; Prentice E. Edrington, Judge.

Petitory action by Gaston Becnel and others against the Louisiana Cypress Lumber Company. From a judgment for defendants; plaintiffs appeal, and defendant moves to dismiss. Motion to dismiss overruled, and judgment affirmed.

L. De Poorter and Robert J. Perkins, both of New Orleans, for appellants. E. D. Saunders, F. C. Marx, and Hall, Monroe & Lemann, all of New Orleans, for appellee.

### On Motion to Dismiss the Appeal.

BREAUX, C. J. [1] Defendant and appellee moved to dismiss the appeal on the ground that the transcript is absolutely incomplete and defective. It alleged that it was made under the exclusive direction of plaintiffs and appellants; that documents were included that had never· been introduced in evidence, and others were excluded that should have been copied; that the transcript was not filed in triplicate. That pages from 150 to 183 were not included in the duplicate copy.

Counsel for appellee filed affidavits in support of their motion to dismiss relating the facts.

The clerk of the district court, in addition to the certificate made out in due form attesting that the transcript was complete, filed several affidavits. In the first affidavit he (the clerk) swore to a state of facts agreeing in the main with the affidavit of counsel for defendant. The other affidavits of the clerk vary from his first.

The appellants also have filed affidavits, and have given their version of the facts. They obtained several certiorari addressed to the clerk to supply the missing documents.

Mr. L. A. Morphy, at the time of counsel for appellee, swore to a state of facts.

Mr. Monroe, also of counsel for appellee, states in his affidavit that he and associate counsel went to the parish seat of St. John parish and called the attention of the clerk to his affidavit dated the 24th of February, 1913. He complained of the transcript. In answer, the clerk stated to him that the transcript had been brought to him by Mr. De Poorter; that it had been prepared in the office of Mr. Perkins. In regard to ·the errors to which his (the clerk's) attention was called, he (the clerk) asserted that they were not his ·errors; stated that he had not checked the documents copied.

The other counsel of defendant, Mr. Marx, said that a large number of documents which had been introduced in evidence were missing from the transcript. He mentioned that the missing papers were the records in the succession of M. A. Becnel, and papers in matter of the succession of Gaston Becnel, and· said that he had reason to believe that they were in possession of counsel for plaintiffs and appellants. He further stated that he mentioned to the clerk that it was his purpose to call the attention of the Supreme Court to the omissions. He states further that, if they were acts of omissions of the clerk, the appeal would not be dismissed,

but, if of counsel, the appeal would be dismissed.

To recount all the facts which arose in matter of this transcript would take unusual space for a decision of a motion to dismiss.

Mr. Perkins, of counsel for the plaintiffs, also filed an affidavit and explained why it was that he had documents copied by a typewriter. He said it was to expedite the preparation of the transcript. He swore that he did not have the missing documents; that he had made diligent search both in his office and in the office of Mr. De Poorter, his associate counsel. He also stated that the affidavit of the clerk of the 24th of February is a correct statement of the facts. He stated in the affidavit that he had nothing to do with omitting the copying of documents in the record; that he knew nothing of the record in the tutorship proceedings relating to the Becnel minors.

Mr. De Poorter, the other counsel, positively swore that he had nothing to do with preparing and compiling the transcript, knew nothing of the missing records, and had nothing to do with the clerk's certificate; did not prompt it at all.

The clerk stated that, on page 2 of an affidavit made prior to that of February 24th, he appears to have stated that he signed the certificate upon the representations made by counsel for plaintiffs and appellants; that the same was a full and complete transcript of the entire record of the case, and so forth.

The facts are, the clerk swore, in his second affidavit (February 24th) that Mr. Perkins was not present, and that he did not communicate with him upon the subject either verbally or in writing; that Mr. De Poorter handed him the different packages of papers as having been made up in Mr. Perkin's office.

Counsel for defendant calls our attention to the affidavit of February 19th, in which the clerk, affiant, states, that:

"At the time he signed the certificate annexed to the transcript of appeal he did so upon representations of counsel for plaintiffs and appellants, that same was a full and complete transcript of the entire record of the case, and that the same contained all the documents and evidence necessary."

We have seen that both counsel for plaintiffs disclaim that they did anything of the kind. Mr. De Poorter swears—

"that he had nothing to do with the preparation and compilation of said transcript of appeal or the records therein contained."

Plaintiffs applied for writs of certiorari to this court to complete the record. The writs were granted ex parte and are not binding upon opposing counsel if they have good grounds to urge against their consideration.

The clerk of court has made a number of copies, part of his return in answer to the writ, and after enumerating these copies in his return he concludes with the statement that Mr. De Poorter, one of the attorneys for plaintiff in rule, produced and tendered to him a copy of the petition which had been introduced in evidence, and which it seems is numbered 7, and also copy No. 10, and asked that they be made part of the returns, as the original was missing; that he (respondent), being unable to produce the original, as it could not be found, produced and copied the copies tendered by De Poorter together with his (De Poorter's) affidavit that he made these copies in 1911; that they were true copies made at the time that he instituted this suit.

Counsel for defendant and appellee, who have moved to dismiss the appeal as before mentioned, disclaim any intention of imputing deception to opposing counsel or of an intention of filing an incomplete transcript. They state in their brief that they claim the transcript is incorrect owing to the careless-

ness of appellant by whom it was prepared.

The question before us, then, is whether the appellants or their counsel are responsible for the incomplete transcript, or the clerk. As before stated, if counsel have taken part in making up this record as it is, the appeal would have to be dismissed; not otherwise.

We are decidedly of the opinion that the transcript is not all that it should be. Two modes suggest themselves: First, to dismiss the appeal; second, remand the case. Emanuel Church v. Riedy, 104 La. 314, 29 South. 149; Grubbs v. Pierson, 111 La. 101, 35 South. 474.

Appellees have not alleged what bearing the alleged defectiveness has upon the issues. Something has been said in argument (to which we have given consideration) about the responsibility of plaintiff for the defective and incomplete state of the record. We have no hesitation in stating that, if the defect is due to the unfortunate intermeddling of counsel for appellant, then the court would be prone to dismiss the appeal, for an appellant should not lend himself to such an irregularity. We have not found that the complaint is well founded. Plaintiffs did not in any way interfere. (We have before stated the facts as relates to counsel.) The record was delivered to them with a full certificate of the clerk (whom we infer they paid), and it was filed in this court. It may be stated as a fact, for there is nothing to show the contrary, that plaintiffs had nothing to do with losing the papers that cannot be found. We cannot refrain from stating that the whole responsibility under the law is with the clerk of court, and, if counsel do not agree in regard to the documents to be copied in the record, he (the clerk) should give special attention to the transcript and see that it is made complete, or, if he is not given sufficient written authority as to what documents to copy, he should prepare the

transcript himself and give due care to the safe-keeping of documents. A case may be reduced to a sad plight when documents are missing and the transcript incomplete. Evidently there was no agreement of counsel, made apparent by the number of affidavits. The clerk of court swore that there was no interference on the part of Mr. De Poorter. He (the clerk) is emphatic and clear upon the subject in regard to both counsel. The brief contains the statement that Mr. De Poorter took no active part in the compilation of the transcript.

[2] The next proposition stated above is whether the case should be remanded.

The clerk of court having certified to the completeness of the transcript, to dismiss the appeal because of an incomplete transcript would be entirely exceptional. Succession of Theriot, 114 La. 611, 38 South. 471.

Now, as to the alleged failure to file three copies of the transcript: Three copies were filed at the same time, on the 17th of February, 1913, within the time required. There are even more mistakes in them than in the original copies. Each of the triplicates is sustained as to its completeness by the clerk of court.

The case is remanded to the district court to the end that the clerk of court may copy all necessary documents in one transcript and return it to this court. The transcript heretofore filed is forwarded to that court with directions to prepare it anew, all to be done within 20 days.

The costs to abide the final decision of case.

Motion to dismiss overruled.

PROVOSTY, J., recused.

### On the Merits.

SOMMERVILLE, J. Plaintiffs, having recently attained their majority, alleging

themselves to be the owners of two-fifths of an undivided half of a certain piece of timber swamp land in the possession of defendant, bring this petitory action, and ask that they be declared the owners of two-tenths of the whole of said property. They allege that their mother, as natural tutrix, in the course of the administration of their property inherited from their father, illegally and without authority sold their interests in said property to the author of defendant; that the sale was null and void; that defendant has held their property in bad faith; and that it is responsible to them for the value of the manufactured lumber taken from said land.

Defendant answered that it had a good and valid title, and there was judgment in its favor. Plaintiffs have appealed.

[3] The evidence in the record discloses that plaintiffs inherited a two-fifths interest in an undivided one-half of certain property which had been owned by their deceased father with Lezin Becnel as a co-owner; that Lezin Becnel, the co-owner, was unwilling to longer hold the property in indivision; and that he demanded of the tutrix of plaintiffs and of the major heirs, their brothers, that the property be sold to effect a partition. Thereupon the tutrix went into court and asked for the convocation of a family meeting to pass upon the terms and conditions of the proposed sale. Her petition to the court closes with the following prayer:

"Wherefore petitioner prays that a family meeting be ordered to be held, to be composed of George Henry Tassin, Prosper Mialaret, Laurent M. Martin, Louis Daveny Perret, and Faustin Rodrigue, the nearest relatives and friends of said minors living in the parish of St. John the Baptist, to advise whether it would be to the interest of said minors that their interest in said property be sold at private sale to effect said partition, and to fix the terms and conditions of such sale, and to appraise said property. And for general relief."

Plaintiffs allege that the suit above referred to was not an action for partition; yet they argue that the requirements of a judicial partition have not been complied with in the sale of their property.

The petition bears none of the elements of a partition suit; there is no defendant named; and there is no citation prayed for; no judgment is asked for against any one, condemning the sale of property. The proceeding was evidently taken under the provision of Act No. 25 of 1878, p. 47, which authorizes the private sale of property held by minors in common with other persons; and the sale in this case was made privately, and not under the provision of the Code on the subject of partition suits. The purpose of this statute is to dispense with a judicial partition of particular property wherein minors have an interest, as had been required by article 1323 of the Revised Civil Code, and to substitute thereof a private sale, on the application of the tutor for the convocation of a family meeting to advise upon the sale. The statute protects the minor co-owners by requiring the appraisement to be made by a family meeting, composed of the relatives or friends of the minor, on the approval of the probate judge; and a sale for not less than the appraised value, and on the terms fixed by the family meeting. If the major co-owner is willing to sell on the basis thus fixed, the whole property may be sold at private sale. Where the whole property is sold to a third person, the tutor and the major heir and the co-owner must necessarily join in making the deed of conveyance of the property.

The act provides:

"When two or more persons, some or all of whom are minors, hold property in common, and it is the wish of any one of them, or, if a minor represented by his tutor or tutrix, to effect a partition on the advice of a family meeting, duly convened according to law, to represent the minor or minors, said property may be sold at private sale for its appraised value, said appraisement to be made and the terms of said sale to be fixed by the family meeting, and said proceedings to be homologated by the judge of

probates of the parish in which the said minor resides."

Plaintiffs set forth 16 different objections in their petition to the sale of their property by their mother and tutrix in the year 1893; but, as many of the objections alleged could only apply to a sale made of minors' property under the provisions of the Code, and not under Act No. 25, 1878, p. 47, it is not necessary to discuss them all in this opinion.

In the case of Duruty v. Musacchia, 42 La. Ann. 357, 7 South. 555, we say in the syllabus:

"The act of 1878, authorizing the sale of property owned in part by minors at private sale, does not require the fulfillment of the prerequisites for a judgment in partition at public auction of property, in which minors are concerned as co-owners.

"The consent of the co-proprietor of age, and that of a family meeting on behalf of the minors, with the concurrence of the tutor and the homologation of the proceedings by the court, authorize the sale of the property at private sale."

And we further say in the body of the opinion:

"We held that the formalities for the sale of the property of minors at private sale had been observed, and deemed the statement sufficient to determine the issue on that point.

"In the case of Bruhn v. Association, 42 La. Ann. 481 [7 South. 556], decided this day, in which the proceeding was a kindred one, we again hold that a sale of property, of which minors are part owners, can take place without being preceded by a formal judgment, as is provided for in partition suits for a sale at public auction.

"It is enough, where the co-proprietors agree, that the family meeting find the necessity or propriety of the sale advantageous to the minors, and that, with the concurrence of the tutor, the court homologates the deliberations and orders the sale, for the price fixed by the family meeting."

In the case at bar, all the formalities embraced in Act No. 25 of 1878 were complied with. There was a family meeting which preceded the sale, held under an order of a competent court, which recognized the necessity and propriety of the sale, and that it was advantageous to the minors. This finding was concurred in by the undertutor; and the proceedings were, with the concurrence of the tutor, duly homologated, and the sale was ordered by the court.

[4] Plaintiffs further urged that it was not alleged anywhere, or proved, that the property was indivisible in kind, and that the sale of their property was therefore null. This is a codal requirement in a judicial partition. It is not required by the terms of Act No. 25, 1878. And the reference by plaintiffs to the case of Kaffie v. Wilson, 130 La. 350, 57 South. 1001, does not sustain the point. A judicial partition was under discussion in that case. And, again, they refer to Trahan v. Wilson, 130 La. 541, 58 South. 178, where we say:

"A sale of property to effect a partition could not be ordered without proof of its indivisibility in kind," while ruling upon a judicial partition.

But in the case of Carrollton Land Co. v. Eureka Homestead, 119 La. 692, 44 South. 434, in speaking of the Dauterive Case, we say:

"It is contended by the defendant that the court ordered the property" sold "without the fact having been established that a partition in kind could not be made."

In the Dauterive Case, it was urged that the property sold was divisible in kind. Answering the objection, the court said:

"It is, we think, the province of the meeting to consider that and all other questions touching the advantage vel non of the sale. Their action, when approved, must be accepted as conclusive."

We further hold in Dauterive v. Shaw, 47 La. Ann. 882, 17 South. 345:

"The Act No. 25 of 1878 authorizes the sale of a minor's property at private sale, when, on the tutor's application, a family meeting advises the sale, appraises the property, fixes the terms, and the proceedings of the meeting are approved by the judge. * * * Under the statute and the adjudication there was no necessity for any suit, and hence no necessity for any discussion of the old question of the jurisdiction of partition suits."

The sale in this case is not predicated upon a judgment of court ordering a partition, but upon a procès verbal of a family meeting, the consideration by that meeting of all questions, including divisibility in kind, and the conclusion of that family meeting, to the effect that it was to the interest of the minors that their property should be sold at private sale, to effect a partition. These findings were approved and homologated by the court some 20 years since. The purchase price was paid, and the property is now in the hands of an innocent third party who has paid value therefor, and who holds under a valid title.

In Dauterive v. Shaw, 47 La. Ann. 882, 17 South. 345, we further say:

"We do not think that the proceedings of a family meeting and the judgment of homologation on which a third party has bought and paid the price can be avoided on this ground. Our jurisprudence, we think, maintains titles of purchasers in good faith, based on judgments homologating the proceedings of family meetings, directing the sale of minors' property. See Lalanne's Heirs v. Moreau, 13 La. 431; Succession of Jacob Hawkins, 35 La. Ann. 593."

Reference to Act No. 25 of 1878 will show that there is no requirement that the property shall be indivisible in kind; and in amending and re-enacting said act in 1912 (No. 50, p. 59), the Legislature has not seen proper to change the law in this respect.

The objects had in mind by the Legislature in amending said act was to make clear the two propositions which had been debated and passed upon by the courts, to the effect that the whole of the property held in indivision, and not only the interest of the minor, or minors, should be sold; and that a co-owner might purchase the interest of minors in such property when sold.

The act proceeds as follows:

"When two or more persons, some or all of whom are minors, hold property in common and it is the wish of a co-owner or co-owners, or of a minor, or minors, represented by his, her, or their tutor or tutrix, on the advice of a family meeting, duly convened according to law, to represent said minor or minors, to effect a partition of the property held in common, the whole of said property may be sold at private sale for its appraised value, said appraisement to be made and the terms of said sale to be fixed by a family meeting, duly convened for that purpose, or the co-owner or co-owners may purchase the entire interest of said minor or minors at private sale for its appraised value, said appraisement of the interest of said minor or minors to be made and the terms of said sale to be fixed by the family meeting convened for that purpose and said proceedings to be approved and homologated by the judge of the district court of the parish in which the said minor or minors resides."

Plaintiffs refer us to the case of Heirs of Mallard v. Dejan, 45 La. Ann. 1270, 14 South. 238. In that case there was no order of court based upon the advice and recommendation of a family meeting, for the sale of the property involved. It was advertised for sale by agreement among the major heirs and the tutor. Before the day of sale, an order was obtained for the sale of the minors' property at private sale, under Act No. 25 of 1878. But the property was sold at public auction. And we there held that the advertisement and sale were illegal, and not authorized.

[5] Another objection is that the undertutor had removed from the parish where he had been qualified to serve, and where the property of plaintiffs, the minors, was located at the time of the family meeting. We are asked to hold that because the undertutor, after qualifying, had removed from the parish of the probate court to another parish of the state, that his office was thereby vacated. Under article 306, C. C.:

"All the causes of incapacity, exclusion and removal mentioned above, apply likewise to the undertutor, except insolvency and indebtedness to the minor or minors."

And the removal by the tutor from one parish of the state to another parish is not a cause for removal of said tutor from his office. Besides, the appointment of a tutor, or undertutor, cannot be attacked collaterally.

[6] The next objection urged is that the

judgment ordered the sale only of the minors' interests in the property, and not the sale of the whole property. We have heretofore held that property owned in conjunction with minors could be sold at private sale only in its entirety. And the whole of the property involved was sold in this case. The judgment of the court, homologating the deliberations of the family meeting, authorized and empowered the tutrix of plaintiffs "to sell at private sale, at a price not less than $2.50 an acre, the share of said minors in the property hereinafter described, in accordance with the advice and recommendations of said family meeting." Of course, the tutrix of the minors could only sell that undivided interest in the property owned by the minors; and she petitioned the court for the convocation of a family meeting to authorize her "to sell their share in said property at private sale to effect a partition by the division of the price of such sale." The entire proceedings show that it was the intention of the tutrix of the minors, and of the other owners in indivision of the property, to sell the whole of that property, and to partition the proceeds among them. This was done. The whole property was sold; and the proceeds were partitioned according to the jurisprudence of the state, and, also in accordance with the act of 1912, No. 50.

Another objection urged is that the proceedings for the convocation of the family meeting to authorize the sale and fix the terms thereof do not set forth any legal reason for the sale of petitioners' property. This charge is not borne out by a reference to the petition of the tutrix, which recites that:

"The said co-owners of said minors wish to have a partition of said property with a view to selling their share of same, and that it would be to the interest of the said minors that petitioner be authorized to sell their share in said property at private sale to effect a partition by a division of the price of such sale; that mode of effecting such partition being more convenient and expeditious and less expensive."

These reasons were sufficient for the members of the family meeting and for the judge to approve their deliberations and to order the sale of the property; and they are sufficient in law.

Another objection urged is that the interest of the petitioners in the property, under the circumstances, could not have been alienated except by public sale. Act No. 25, 1878, makes a contrary provision.

The next ground urged is that:

"The petition filed by Mrs. Leonie Provosty Becnel in her capacity as tutrix was not an action for partition, and that the proceedings thereunder were null."

This objection has already been answered in this opinion.

[7] The next objection is that:

"The tutrix had no right to delegate, to another, authority to sell the minors' property and to receive the purchase price."

The judge a quo disposes of this point in the following language:

"As to the question that a tutor cannot act through an agent, plaintiffs' counsel quotes article 351 of the Revised C. C., half of the first line of the first paragraph, which reads as follows, 'A tutor administers by himself alone,' but fails to quote the second paragraph of the same article, which provides, 'He' (the tutor) 'can, on his own responsibility, act by an attorney in fact, in places distant from his residence.'

"The court gathers from the evidence that, at the time of the passing of the act of sale to J. D. Willis in the city of New Orleans, Mrs. Leonie Provosty Becnel had left the parish of St. John the Baptist, and was living and residing with relatives in the parish of Pointe Coupee, away from and in a parish distant from the city of New Orleans."

[8] Plaintiffs next allege that they have not received any portion of the selling price of their property. They offered no evidence to sustain this allegation; and, as their interest in their father's succession was small, it is very likely that this money was spent for their sustenance and support during the long

years of their minority, in the absence of any charge of fraud on the part of their mother, their tutrix, and of the major brother, who received the selling price of the property, under written authority from his mother. Besides, it is not incumbent upon the purchaser of property at private sale, under an order of court homologating the proceedings and procès verbal of a family meeting recommending the sale of minors' property to effect a partition, to follow the purchase price which he paid to the tutrix, or her agent, and see that the tutrix turns the amount over to the minors.

· Plaintiffs attempt to support this claim by showing that their mother, as tutrix, rendered no account, and that the terms of article 1345, C. C., were not carried out. The tutrix is now dead, and not able to explain why she failed to file an account; perhaps, the reason was that she had nothing to account for, and nothing to turn over to the minors. And article 1345, C. C., has reference to judicial partitions. It has no application to the sale in this case.

Judgment affirmed.