No. 104.—JOHN H. MITCHELL, Dative Testamentary Executor, *v.*
ABRAHAM LEVI.

·A purchaser of a tract of land at probate sale made under an order of a court of competent
jurisdiction, directing a sale of *all* the property of the succession, is not affected by the
failure of the executor to have such land placed on the inventory or to have it accurately
described on the inventory.

If it appear that gross negligence and want of due precaution has characterized the actions
of the executor in the manner of conducting the administration of the estate he repre-
sents to an extent which amounts to a fraud on the estate, yet the purchaser at probate
sale, in good faith and unconnected with the fraud, is not affected thereby, if it be shown
that the order under which he purchased emanated from a court of competent jurisdic-
tion and the proceedings thereunder were regular upon their face.

The fact that one of two law partners is the executor of an estate does not disqualify the
other member of the firm from acting as the agent of a creditor of the estate.

APPEAL from the Fourteenth Judicial District Court, parish of
Ouachita. *Ray*, J. *W. J. Q. Baker*, for plaintiff and appellee.
*Morrison & Farmer*, for defendant and appellant.

This case was tried by a jury in the court below.

TALIAFERRO, J. This action is brought by the plaintiff as dative
testamentary executor of John Liles, deceased, to annul an adjudica-
tion made to the defendant of a tract of land sold at a probate sale of
Liles' estate on the twenty-third of May, 1863, and which was invoked
by Morrison, the former executor of Liles. The petition charges, that
through the fraudulent contrivance of Morrison, participated in by the
defendant, a tract of land belonging to the estate, containing in reality
five hundred and ninety-three acres and a half, was illegally and
fraudulently sold as containing only three hundred and fifty-nine and
a half acres, and adjudicated to the defendant, represented at the sale
by an agent, who is also charged with having knowledge of the fraud-
ulent concealment of the quantity of land sold within the specified
boundaries and as having been appointed to this agency by Morrison
himself or at his instance. The suit thus brought is properly the
sequel of one entitled "John C. Rogers et al. *v.* C. H. Morrison,
Executor, et al," instituted in the parish court of the parish of Ouachita
and brought by appeal before this court at the Monroe term of 1869.
See 21 An. 455. The decree then rendered removed Morrison from his
office as executor, but dismissed the demand for the annullment of the
sale for want of jurisdiction of the parish court without prejudice to
the plaintiff's rights. The two suits are, therefore, blended, the present
plaintiff adopting as his own all the allegations of the plaintiff in the
former action. He avers that there was no legal and proper inventory
made of the plantation on which the decedent resided; that there was
left off the inventory a tract of land purchased by the decedent from
John F. Parker, containing two hundred and thirty-four acres cleared
and in cultivation; and that Morrison, the executor who caused the

inventory to be made, knew the fact that this parcel of land belonged to Liles' estate, and yet failed, refused and neglected to have it placed upon the inventory and appraised; that the advertisements do not correspond with the inventory nor with the facts, and that the attempt to fix metes and bounds in the advertisements not fixed by the inventory was illegal and a badge of fraud, and rendered the whole sale null and void.

The case was tried before a jury. They found a verdict in favor of the plaintiff and judgment was rendered by the court below annulling the sale to Levi and decreeing the land in controversy to be the property of the estate of Liles. The defendant prosecutes this appeal.

We do not think it important to discuss the several bills of exceptions that were taken during the trial of the cause, and, therefore, omit a special notice of their contents.

Four several tracts of land lying on the east side of the Ouachita, belonging to Liles' succession, are specified on the inventory. Three of these lots or parcels are designated as being lots Nos. 6, 3 and the east half of lot No. 4, "in the partition of the estate of Frantom." The fourth is described as acquired by the decedent from W. E. D. Scarborough on the twenty-seventh of July, 1850, and as lying on the east bank of the Ouachita river, five miles below Monroe, and containing two hundred and thirty-seven acres, more or less. The aggregate of the whole is put down as five hundred and seventy acres and forty-three-hundredths, appraised at thirty-five dollars per acre. The quantity of each of the three lots of the Frantom land is given. There are no special and exact metes and bounds given to each lot or tract separately or to all the tracts collectively. These lands were sold in two parcels, one of which is stated to contain two hundred and ten acres and a fraction, and the other three hundred and fifty-nine and a half acres. The first of these was purchased by Mrs. Liles, the second by Levi. Both in the advertisement of sale and in the sheriff's proces verbal of sale these lots are given specific boundaries. The lot purchased by the widow is called the Frantom tract, lying on the Ouachita river, bounded above by the lands of the heirs of Reuben Frantom and below by the lands of R. W. Richardson, containing two hundred and ten and three-hundredths acres, more or less. The lot purchased by Levi is called "the plantation on which deceased resided at his death, lying on the Ouachita river, about seven miles below Monroe, Louisiana, bounded above by the lands of R. W. Richardson and below by the lands of the heirs of Reuben Frantom, containing three hundred and fifty-nine and a half acres, more or less." It is fully established by the evidence that the intervening "Parker" tract, containing two hundred and thirty-seven acres, lies within the metes and bounds given to the portion of the land adjudicated to Levi.

The plaintiff lays much stress upon the fact that by the advertisement and proces verbal of sale the same metes and bounds are not given that are found in the inventory, and contends that the nullity of the sale results from such discrepancy. It is usual in advertising lands for sale under orders of court to refer to the public inventories of the property for the locations, boundaries and quantities of the tracts or parcels to be sold; but we are not referred to any law which imperatively requires, under pain of nullity of the sale, that the description in the advertisement or sale shall follow exactly that which is given in the inventory. If such were the rule many sales would be found defective. It often happens that locations and boundaries are imperfectly expressed in inventories. There can be no good reason in such cases why the identical lots or tracts of land may not be more accurately described and designated in an advertisement or sale by the use of terms which indicate more clearly their locality, extent and boundaries. In the case before us, if the quantity actually contained within the specified boundaries of the tract purchased by Levi were correctly given, both in the inventory and advertisement, would nullity result from the boundaries being expressed as they are in the advertisement and sale instead of the manner used in the inventory, the lands meant being identical? If so, the sale of the portion of the lands of the estate to Mrs. Liles would, for that reason, be a nullity; but this is not claimed by the plaintiff. The petition of the executor, Morrison, for a sale of *all* the property of the estate to pay its debts, was followed by an order responsive to the prayer of the petition. How far the purchaser of a tract of land at a probate sale of succession property, made under an order of a court of competent jurisdiction, directing a sale of *all* the property of the succession, could be affected by the failure of the representative of the succession to have the tract placed upon the inventory and appraised, we will proceed to consider. The testimony in this case forbids the conclusion that the omission to place upon the inventory the tract of land purchased from Parker could have arisen in any other way than through the grossest and most inexcusable neglect of duty on the part of the executor, acting at and prior to the sale. The reasons for entertaining this view of the matter are given in the case in 21 An. referred to, and it is needless here to reproduce them. The matters for inquiry now are more especially: Did the defendant, Levi, enter into a fraudulent scheme with any person to deprive the succession of Liles of a large and valuable tract of land under the fictitious purchase? Did he, with the intent to enrich himself by the loss of the estate, become a party to an act of spoliation, if the concealment complained of in regard to the quantity of land sold be properly so called? Had his agent such knowledge, or had his agent any complicity in a scheme to defraud the succession?

It is shown that Levi is a judgment creditor of Liles with first mortgage against the property of the estate for a large debt; that Levi is a commission merchant residing in New Orleans; that Liles dealt with him in that capacity, obtaining from him necessary supplies to a large amount to carry on his business of planting; that Morrison & Farmer, as the attorneys of Levi, had charge of and attended almost exclusively to his business in the parish of Ouachita; that the matters relating to his purchase of the land were managed and directed entirely by his attorneys; that the object in view in making the purchase was to secure the debt of Liles; that Levi had never been on the Ouachita river before the trial of this suit, in which he was a witness, and that he had never seen the land purchased for him by his agent; that he is not in the habit of purchasing or speculating in lands. The plaintiff aims to show that, in fact, by a transfer of certain notes of one Hogan to Levi, and upon which judgment was obtained in favor of Levi, the debt of Liles to Levi was extinguished; but in this we think he has failed. But whether a creditor or not he was bound to pay the price bid for the land, and this, it appears, he was at any time able and ready to do had there been a proper party ready and willing to receive. In fact he made a legal tender of payment, which was refused. In his testimony he disclaims in the clearest and most pointed terms any knowledge of or participation in any measure intended by undue means to acquire the land in question. We are constrained, from our review of the evidence, to say that we find nothing in it which we think warrants the belief that Levi had knowledge of or participated in any fraudulent act in the proceeding. All that is presented to show a different aspect amounts to little more than conjecture or inference. The principle is elementary that fraud is not presumed, but must be proved. There is nothing we find in the testimony which in the slightest degree rebuts the strong exculpatory evidence in behalf of the defendant, and if a fraud were intended on the part of Morrison we should be left to infer that his act was prompted by ulterior views and motives of which the defendant Levi is ignorant.

We next turn to the position of Farmer, who acted as the agent of the defendant, Levi, in purchasing the land for him. It is objected by the plaintiff that Farmer was incompetent to act in the capacity he did and that that renders the purchase by him null. Farmer, throughout the whole proceedings, was the law partner of Morrison, and as such it is strenuously held that Morrison being the executor of Liles' estate and the proceedings taken in regard to the affairs of the estate being conducted by the firm of Morrison & Farmer, it was illegal and reprehensible in him to act also in the interests of Levi, which were adverse to those of the succession. The evidence discloses that in

regard to the business and interests of the succession they were exclusively attended to by Morrison, the executor, although the firm's name was signed by him to the documents necessary to be filed in court. We see no such incompatibility in this case as rendered Farmer individually incompetent to act as the agent of Levi in the single act of appearing at the probate sale and bidding for him. He was not the agent of the succession to sell. His relation to the succession prior to the sale was that of attorney at law. There did not exist in his case the inconsistent relation of buyer and seller in the same person. Perhaps it were best in all things to shun even the appearance of evil, but we imagine it often happens that an agent's acts have an apparent incongruity when no legal incompetency exists. ,

The plaintiff, in our understanding of the evidence, has entirely failed to establish that the agent of Levi had any knowledge of a fraudulent design in the sale of the property of Liles' estate and consequently of any complicity in it.

The defendant, then, standing in the attitude of a *bona fide* purchaser, it remains only to inquire whether he is affected by any irregularities or illegalities that may exist in the proceedings in regard to Liles' estate prior to the order of sale. And we would here remark that it has so frequently been held by this court that in sales of the kind in question, the purchaser is not bound to look beyond the order of a competent court directing the sale, it seems hardly necessary to advert to the numerous decisions sustaining this doctrine. In the case of the succession of John Gurney, 14 An. 622, in an action to annul a sale on the ground of grave defects in the inventory, no showing made of the necessity of a sale, and that no notice had been given to absent heirs, the court decided that there were "irregularities which do not render the decree of the court and the sale under it null and void," and go on to say: "The court had jurisdiction, and its decree protects the purchaser, although he was the administrator and one of the heirs at law, in the absence of any charge or proof of fraud against him." 13 La. 432; 16 La. 440; 3 R. 122; 9 An. 107; 18 An. 485 and 553; 21 An. 505.

We therefore think that under the authority of these and many other decisions, the exception was well taken by the defendant to the refusal of the judge *a quo* to give this well settled doctrine in charge to the jury.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. It is ordered that the sequestration taken out by the plaintiff be set aside, and that the defendant be quieted in his title and possession of the tract of land purchased by him at the probate sale of the succession of John Liles, deceased, on the twenty-third of May, A. D. 1868, the plaintiff paying all costs of these proceedings.

Mitchell, Dative Testamentary Executor, v. Levi.

LUDELING, C. J., *dissenting.* This is an action to annul a judicial sale on the ground of fraud and other illegalities. A branch of this case was before us in July, 1869, and we then said: "We think it established by the record that .the home place really contained about five hundred and ninety acres, and that its sale for $5250, if maintained, would result in a great loss to the estate." * * "It appears that he (the executor) has been recorder of this parish; that he was a neighbor and intimate friend of the deceased; that he was a witness to the act of sale from Parker to Liles of the omitted tract; that this act was recorded and indexed at the time the inventory was made; that as attorney for Liles he had occasion to know that during the last year of his life the decedent rented three hundred acres of cleared land of the home place to Hardy, and cultivated himself about one hundred and forty acres; that, at the first offering, he was admonished by Judge Richardson that the place contained upwards of five hundred acres, and that he was under the impression himself, as appears by his own evidence, that the plantation contained more land than the advertisement described, and yet, under such circumstances as these, without making a search, he causes the place to be sold *per aversionem*, in such a way that, if the sale be not hereafter annulled, the defendant Levi will secure five hundred and ninety acres instead of three hundred and fifty-nine and a half acres, which were inventoried."

At the instance of the defendant the case was tried by a jury, who found a verdict for the plaintiff, and the judge *a quo*, who heard the witnesses, rendered judgment accordingly.

It appears that Morrison & Farmer were attorneys for the estate of Liles. In the case of Rogers *v.* Morrison we said that Morrison, as Liles' attorney, had occasion to know that more lands were embraced within the boundaries than were advertised. Farmer was the agent of Levi, and his knowledge was that of his principal. Only three hundred and fifty-nine and a half acres were inventoried, appraised and advertised, and only those who possessed information, not furnished by the advertisement, could know that five hundred and ninety acres of land were to be sold.

It was a fraud in both the buyer and the seller to attempt to sacrifice the property of the estate in such a manner.

The purchaser Levi has never complied with his bid. It was a credit sale—the bidder has never executed his notes with security, as required by law and the advertisement, or paid one cent for the property up to this day. No such notes are produced or shown to have been executed.

Why this extraordinary indulgence to this bidder, when the executor had in such haste obtained an order, within less than six months after the death of the testator, to sell all the property of the estate to pay debts?

It does not appear that Farmer had a written power of attorney to buy for Levi, or express authority to sign notes in his name.

Levi testified that he had never been on the place before the sale, and did not know that it contained more land than was mentioned in the advertisement. If this be true, it is dishonest for him to claim five hundred and ninety acres when only three hundred and fifty-nine and a half acres were bid for.

Can an executor sell property which has never been inventoried and appraised?

The three hundred and fifty-nine and a half acres which were inventoried and appraised were appraised at $35 per acre. The five hundred and ninety acres claimed to have been sold brought only $5,250, or less than one-third of the appraisement *per acre.*

The order directed that the property of the estate be sold "according to articles 990 and 991 of the Code of Practice." These articles direct that the property should be sold at *its appraisement* for cash, and if the appraisement be not bid, then that it be sold on a credit of twelve months. *Two hundred and thirty acres of the land were never appraised,* consequently the terms of articles 990 and 991 were not complied with, nor was the mandate of the court obeyed. The executor was not authorized to make *per aversionem* by the order of sale, or the law, and he could not legally have done so.

But, even if fraud had not been proved, the defendant should not be permitted to get a title to five hundred and ninety acres of land when he and his agent believed they were buying only three hundred and fifty-nine and a half acres.

I think the Parker tract, which was not inventoried or appraised, could not have been legally sold. C. P., articles 990, 991, 992; 2 An. 996; 5 An. 1. The order to sell property of an estate can not be extended so as to authorize the sale of property not inventoried or appraised, and the sale is void on account of the absence of a judgment or order of a court to authorize it.

But I deem it unnecessary further to refer to the concatenation of circumstances which indicate fraud in this sale.

The verdict of the jury should not be disturbed on a question of fraud unless the evidence shows that their verdict is *manifestly wrong.*

This, I take it for granted, can hardly be said to be the case when two of the judges of this court and the district judge, before whom the case was tried, concur in the opinion that the verdict is correct. I apprehend that it will be the first time in the history of jurisprudence that such a thing was done.

I am constrained, therefore, to dissent from the opinion of the court.

HOWE, J. The defendant asked for a jury, and they found a verdict against him. The questions were peculiarly within their province, and I am not prepared to say that their finding was erroneous.