## Davis *v.* Gaines.

1. According to the law of Louisiana in force in 1813, if the heirs, whether forced or voluntary, of a testator were absent from the State, the Probate Court had jurisdiction to order a sale of his property.

2. The will having been duly proved, the proper Probate Court, upon the petition of the executor, made an order, pursuant to which the immovables of the deceased were, according to law, sold and conveyed to a purchaser in good faith for a valuable consideration. *Held*, that his title is not affected by the subsequent discovery and probate of a later will appointing another person executor, and making a different disposition of them.

3. The order of sale is an adjudication that all the facts necessary to give the court jurisdiction existed.

4. Where the possession of the immovables so sold was held for over sixty years, under the executor's deed, which recites that the sale was made "after the publications and delays prescribed by law," and it appears from his account, remaining of record in the Probate Court for fifty years, that he paid a specified sum for advertising the sale, — *Held*, that the deed and account are competent evidence of the advertisement, and being uncontradicted are conclusive.

5. When the purchase-money was applied to the extinguishment of a mortgage executed by the deceased, and constituting a valid incumbrance on the immovables, the purchaser, although the sale was irregular or void, cannot be ousted of his possession upon a bill in equity filed by the heirs or the devisees unless they repay or tender him the purchase-money.

6. The prescription applicable to immovables in Louisiana cannot be maintained unless the possessor obtained them in good faith and by a just title; that is to say, by a title which he derived from those whom he believed to be the true owners, and which, if they had in fact been such owners, was by its nature sufficient to transfer the ownership.

7. The prescription against all informalities connected with or growing out of a public sale by a person authorized to sell at auction, may be pleaded by one who purchases in good faith at the sale of an executor or a register of wills, and holds by a just title, against the averment that the sale was not advertised, that the inventory of the estate was not completed before the order of sale was made, or that it was partly made by appraisers appointed by the testamentary executor, or that it was signed by only one of the two appraisers so appointed. Such informalities are cured by the lapse of five years.

APPEAL from the Circuit Court of the United States for the District of Louisiana.

The facts are stated fully in the opinion of the court.

*Mr. J. D. Rouse* for the appellant.

*Mr. John S. Whitaker*, contra.

MR. JUSTICE WOODS delivered the opinion of the court.

This was a bill in equity filed by Myra Clark Gaines, the appellee, against Minor Kenner, the intestate of Eliza Davis, the appellant, and a large number of other defendants, to recover real estate, of which she claimed to be the devisee under the will of her father, Daniel Clark. The defendants were alleged to be in possession respectively of distinct parcels of the property sued for.

The facts, so far as they concern the controversy between the appellant and appellee, were as follows: Daniel Clark purchased the real estate in dispute between them from one Stephen Henderson, on Dec. 16, 1812, wholly upon credit. The purchase price was $120,000, to secure which a mortgage was retained in the act of sale. On May 20, 1811, he executed and published what then purported to be his last will and testament, as follows: —

"In the name of God, amen. I, Daniel Clark, of New Orleans, do make this my last will and testament.

"Imprimis. I order that all my just debts be paid.

"Second. I leave and bequeath unto my mother, Mary Clark, now of Germantown, in the State of Pennsylvania, all the estate, whether real or personal, which I may die possessed of.

"Third. I hereby nominate and appoint my friends Richard Relf and Beverly Chew my executors, with power to settle everything relative to my estate.

"DANIEL CLARK.

"NEW ORLEANS, 20 May, 1811."

He died Aug. 16, 1813, and on the next day the will was proven before the Probate Court for the Parish of Orleans, and on the 27th of that month letters testamentary were issued to Richard Relf as sole executor, Chew being absent from the State.

The appellant claimed title to the plantation under a sale thereof made Nov. 8, 1813, by Thomas Beale, register of wills, at public auction, to Michel Fortier and Omer Fortier, for $120,000, by authority, as she asserted, of an order of the Probate Court. Relf, the executor, in pursuance of the sale, conveyed the property to the purchasers by deed, in which he stipulated to apply the purchase-money, as fast as received, to

the discharge of the mortgage of $120,000 placed on it by Daniel Clark.

The purchase-money was so applied, and the entire sum secured by the mortgage, with the interest thereon, was thus discharged.

The property came into the possession of Minor Kenner, whose estate the appellant represents, as owner, by regular chain of conveyances from the vendees of Michel and Omer Fortier.

The title of the appellee was derived under the will of Daniel Clark executed July 13, 1813, which was filed for probate in the Probate Court of the Parish of Orleans on Jan. 18, 1855, and which by the judgment of the Supreme Court of Louisiana on Dec. 17, 1855, was recognized as the last will and testament of Daniel Clark, and ordered to be recorded and executed as such.

The second item of this will was as follows: " Second, I do hereby acknowledge that my beloved Myra, who is now living in the family of Samuel B. Davis, is my legitimate and only daughter, and that I leave and bequeath unto her, the said Myra, all the estate whether real or personal of which I may die possessed, subject only to the payment of certain legacies hereinafter named."

Both parties, therefore, trace title to Daniel Clark.

*Prima facie* the title of the appellee to the property in dispute under the provision of this will, which is the later and last will of Daniel Clark, is clear.

The controversy, therefore, depends upon the three defences set up by the appellant.

The record shows that the will of May 20, 1811, was duly admitted to probate by the Probate Court of the Parish of Orleans, and ordered to be executed; that within the year following the order of probate, to wit, on Aug. 27, 1813, upon the petition of the executor, an order for the sale of the real and personal property of the testator was made by the court having jurisdiction thereon; that an inventory was begun by Thomas Beale, register of wills for the Parish of Orleans, on Aug. 28, 1813, under the direction of said Probate Court, in which the plantation sued for was included as a part of the

estate of Daniel Clark; that on Nov. 8, 1813, pursuant to said order, Beale, the register of wills, sold and adjudicated the plantation to Michel Fortier and Omer Fortier for the sum of $120,000; and that on Nov. 11, 1813, Relf, the executor, made an act of sale to the purchasers.

The appellant, therefore, contends, first, that by virtue of said will and its probate, and the order of sale, and the sale and conveyance thereunder, the said Michel and Omer Fortier acquired a good and valid title to said premises, which, by mesne conveyances from them, was vested in her intestate.

The record further shows that the act of sale recited the existence of the mortgage for $120,000 placed upon the property by Daniel Clark in favor of Stephen Henderson, on Dec. 16, 1812, and his executor bound himself to discharge the same out of the purchase-money, as it should be paid by the purchasers, the Fortiers, and that said mortgage was in fact discharged and paid by the application thereto of said purchase-money.

The appellant therefore contends, secondly, that there can be no decree in favor of the appellee for the property until the purchase-money which was applied to the payment of the debts of the testator is repaid or tendered, if it shall turn out that the Fortiers were purchasers in good faith.

The appellant contends, thirdly, that from Nov. 8, 1813, until Jan. 3, 1866, when process was served in this case, she, and those under whom she claims, held continuous, peaceable, and unequivocal possession of said plantation, and that neither said Michel and Omer Fortier, at the time they purchased the plantation, nor any of the parties through whom she claims title, had any knowledge, information, or belief of the making or existence of the last will of Daniel Clark, executed in 1813; that the various persons who claimed title to said property under the sale made to Michel and Omer Fortier possessed the same in good faith and under a just title as owners, and that each of them had the right to acquire the same by prescription; and she pleads the prescription of ten, twenty, and thirty years in bar of the bill of complaint.

The first question for consideration is whether or not the

proceedings of Relf, the sale made by the Register of Wills under the order of the Probate Court, and the deed of Relf as executor in pursuance thereof, vested a title to the plantation in the purchasers.

The code of ·1808 was in force when the proceedings which resulted in the sale to the Fortiers were taken. Article 169, book· 3, tit. 2, of that code declares : " When of the testator's heirs some are absent or not represented in this territory, the testamentary executor, whether the seisin be granted to him or not, and whether those heirs be forced or voluntary, shall be authorized to take possession of the property of the succession, to cause it to be sold, and to remain in possession of the portion accruing to the absent heir or heirs, deducting the debts and legacies, until those heirs shall have sent their power of attorney, or till the expiration of the year of the testamentary execution."

By the will of 1811 it appeared that Mary Clark, the mother of testator, who was constituted his universal legatee, and thereby became his heir (Civil Code, art. 880), was absent from the State of Louisiana. Moreover, " the granting of the license to sell was an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial if no appeal was taken." *Grignon's Lessee* v. *Astor*, 2 How. 319.

It is, therefore, not disputed that, upon the ground of the absence from the State of the universal legatee, it was competent for the Probate Court, upon the application of the executor, to make an order for the sale of the testator's property.

The jurisdiction of the Probate Court of the Parish of Orleans to admit to probate and record the wills of deceased persons is unquestioned.

Its power and authority to order a sale of the property of a testator, by virtue of article 169, book 3, tit. 2, of the code of 1808, is not and cannot be disputed. If the Fortiers purchased in good faith under an order of sale made by the Probate Court, for a valuable consideration, without any knowledge of the later will of Daniel Clark, and while the authority of the executor appointed and qualified under the first will con-

tinued, and there was no fatal defect in the proceedings antecedent to the sale and conveyance to them, does the fact that such later will, making other dispositions of his property, was discovered and admitted to probate, render void their title ?

We think this question must be answered in the negative.

A sale by order of a probate court is a judicial sale. *Moore* v. *Shultz,* 13 Pa. St. 98; *Grignon's Lessee* v. *Astor,* 2 How. 319; *Thompson* v. *Tolmie,* 2 Pet. 157; *Lalanne's Heirs* v. *Moreau,* 13 La. 431 ; *Howard* v. *Zeyer,* 18 La. Ann. 407.

Such sales are, therefore, protected by the rule that a title acquired at a decretal sale of lands, made by a court in the exercise of competent jurisdiction, is not rendered invalid by the reversal of the decree. *Ward* v. *Hollins,* 14 Md. 158; *Irwin* v. *Jeffers,* 3 Ohio St. 389; *Gossom* v. *Donaldson,* 18 B. Mon. (Ky.) 230; *Fergus* v. *Woodworth,* 44 Ill. 374; *Gray* v. *Brignardello,* 1 Wall. 627, 634.

In the case last cited this court said : " Although the judgment or decree may be reversed, yet all rights acquired at a judicial sale, while the decree or judgment was in full force, and which it authorized, will be protected. It is sufficient for the buyer to know that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale."

In the case of *McCullough* v. *Minor* (2 La. Ann. 466), the Supreme Court of Louisiana said : " The jurisdiction of the court was undoubted, and the jurisprudence of the State has long been settled that a *bona fide* purchaser at a judicial sale is protected by the decree."

But it is not necessary to rely solely on this general doctrine. This court and others have directly applied the law probate which governs judicial sales to sales made by order of courts.

Thus, in *Thompson* v. *Tolmie* (2 Pet. 157) this court said : " The law appears to be settled in the States that courts will go far to sustain *bona fide* titles acquired under sales made by statutes regulating sales made by order of the orphans' courts. When there has been a fair sale the purchaser will not be bound to look beyond the decree, if the facts necessary to

give the court-jurisdiction appear on the face of the proceedings."

See also *Grignon's Lessee* v. *Astor, supra.* By a law of Michigan passed in 1818 the county courts had power under certain circumstances to order the sale of the real estate of a deceased person for the payment of debts and legacies. In reference to a sale of real estate made under this law the court said in that case: " The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial if no appeal is taken. The rule is the same whether the law gives an appeal or not; if none is given from the final decree it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence. The court having power to make the decree, it can only be impeached for fraud in the party who obtains it; a purchaser under it is not bound to look beyond the decree; if there is error in it of the most palpable kind, if the court which rendered it have in the exercise of jurisdiction disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, — the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects; they are not courts of special or limited jurisdiction."

" In the Orphans' Court, and all courts who have the power to sell the estates of intestates, this action operates on the estate, not on the heirs of the intestate; a purchaser claims not their title, but one paramount. The estate passes to him by operation of law. The sale is a proceeding *in rem*, to which all claiming under the intestate are parties, which divests the title of the deceased." See also *Erwin* v. *Lowry*, 7 How. 172; *Griffith* v. *Bogert*, 18 id. 158; *Florentine* v. *Barton*, 2 Wall. 210; *McNitt* v. *Turner*, 16 id. 352.

On the same subject the Supreme Court of Appeals of Virginia, in *Ballow* v. *Hudson* (13 Gratt. (Va.) 672), said: " Considerations of public policy require that all questions of

,succession to property should be authoritatively settled. Courts of probate are, therefore, organized to pass on such questions when arising under wills, and a judgment by such a court is conclusive while it remains in force, and the succession is governed accordingly. A judgment of this nature is classed among those which in legal nomenclature are called judgments *in rem.* Until reversed it binds not only the immediate parties to the proceeding in which it is had, but, all other persons and all other courts."

In *Lalanne's Heirs* v. *Moreau (supra)*, the Supreme Court of Louisiana said: " Sales directed or authorized by courts of probate are judicial sales to all intents and purposes, and the purchaser is protected by the decree ordering them."

So in *Howard* v. *Zeyer (supra)* the same court said: " A warrantor is not bound to look beyond the decree of the court ordering the sale of succession property, and he acquires all the right of the deceased to said property, and no more."

In *Grignon's Lessee* v. *Astor (supra)*, this court said: " Proceedings in a probate court to sell property of a decedent have been held to be proceedings *in rem*, to which all claiming under the decedent are parties."

In *McPherson* v. *Cunliff* (11 Serg. & R. (Pa.) 422), the court said that the decree of an orphans' court for the sale of land was conclusive; that the proceeding was purely *in rem* against the estate of the intestate and not *in personam.*

In *Lalanne's Heirs* v. *Moreau (supra)*, it was said " that the decree of the Court of Probate ordering a sale of the property of minors is so purely *in rem* and against the property, that a sale made under it extinguishes all the mortgages existing in the name of the owner of the property sold."

In *Green* v. *The Baptist Church* (27 La. Ann. 563), the same court held that purchasers are not bound at their peril to inquire, when property is advertised for sale by an executor, whether anything has occurred outside the court to destroy the will under which he is acting.

In *Gaines* v. *De La Croix* (6 Wall. 719), which was a bill filed by the appellee in the present case against De La Croix, to recover certain slaves claimed by him under a sale made to

him by Relf, as executor of the will of 1811 of Daniel Clark, the defendant claimed that his titles, derived by the purchase from Relf, were valid, because he purchased within the year, while the functions of Relf, as executor, were in full force. In passing upon this point the court said : " This is true if he purchased in good faith, and the requisites of the law on the subject of the sales of succession property were complied with."

The case involved two purchases, and both were held invalid; one because it was made at private sale, and, consequently, the purchaser acquired no title; and the other because, though made at public auction, the court found that De La Croix had knowledge of the will of 1813 and its contents, and " that he knew the will under which he was buying was not the true will of Daniel Clark," and he, therefore, "got the property in bad faith."

It is objected, however, that the discovery of a later will and its probate showed that the will of 1811 was utterly void, and could furnish no valid ground for the order of sale. But it must be borne in mind that the will of 1811 had been duly admitted to probate by a court which had jurisdiction of the subject-matter, and whose duty it was to ascertain and declare whether the will presented to it was in fact the genuine last will and testament of the testator. Having declared the will of 1811 to be the genuine last will of Daniel Clark, acts done under that probate in a lawful manner until the discovery of a later will were valid and binding.

The English authorities hold that the record of probate and of the qualification of the executor is conclusive evidence of the existence of the will and of his authority.

*Allen* v. *Dundas* (3 T. R. 125) was an action on the case, brought by Allen as administrator of Priestman, against Dundas, for money had and received to the use of the intestate, and to the use of the plaintiff as administrator. The defendant pleaded the general issue. On the trial a special verdict was found, stating, in substance, as follows : The defendant, as treasurer of the navy, was indebted to the intestate in his lifetime £58, &c., for money had and received to his use. Priestman died June 2, 1784; on Aug. 13, 1785, one Robert

Brown proved in the Prerogative Court of the Archbishop of Canterbury a forged paper-writing, dated May 18, 1784, purporting to be the last will of Priestman, whereby he was supposed to have appointed Brown the sole executor thereof, and a probate of that supposed will issued in due form of law under the seal of that court, on the same day, in favor of Brown. The defendant, not knowing the will to have been forged, and believing Brown to be the rightful executor, on Brown's request paid him the £58, being the whole balance then due from the defendant to Priestman. Afterwards, on July 21, 1787, upon citation to Brown in the same court, the will and probate were declared void, and it was further declared that Priestman died intestate. On March 31, 1788, letters of administration on the goods of Priestman were granted to the plaintiff. Upon this verdict judgment was entered for defendant. Upon this case Buller, J., said: " The first question to be considered is, What is the effect of a probate? It has been contended by the plaintiff's counsel, *first*, that it is not a judicial act; and, *secondly*, that it is not conclusive. But I am most clearly of opinion that it is a judicial act, for the Ecclesiastical Court may hear and examine the parties on the different sides whether a will be or be not properly made; that is the only court which can pronounce whether or not the will be good, and the courts of common law have no jurisdiction over the subject. Secondly, the probate is conclusive until it be repealed, and no court of common law can admit evidence to impeach it. Then this case was compared to a probate of a supposed will, of a living person ; but in such a case the ecclesiastical courts have no jurisdiction and the probate can have no effect; their justification is only to grant probate of the wills of dead persons. The distinction is this: if they have jurisdiction, their sentence, as long as it stands unrepealed, should avail in all other places ; but when they have no jurisdiction, their whole proceedings are a nullity." The judgment was concurred in by Justice Grose, and, as appears by a note at the end of the case, was approved by Lord Kenyon.

The same principle, that a probate is conclusive until repealed, was adverted to in an indictment for forging a will in

*Rex* v. *Vincent* (1 Stra. 481), where, on an indictment for forging a will of personal estate, on the trial a forgery was proved, but the defendant producing a probate, that was held to be conclusive evidence in support of the will.

To the same effect is the case of *Woolley* v. *Clark*, 5 Barn. & Ald. 746. See also Williams on Executors (6th Am. ed*i*), 590 and note (x'), where many cases to the same effect are cited.

In *Packman's Case* (6 Co. 19), it was held that, though letters of administration be countermanded and revoked, a gift or sale made by the administrator acting under the probate was not thereby defeated.

To the same effect is the case of *Semine* v. *Semine*, 1 Lev. 90.

So in *Graysbrook* v. *Fox* (Pl. Com. 282), it was held that where one is executor, not of right but of wrong, yet if he had paid any debt due by specialty, or other thing which the law will force the executor to pay, the true executor should have been bound by it, and should have been obliged to allow it because the other was compellable to pay it, and the true executor had no prejudice by it, forasmuch as he himself should have been bound to pay it.

In *Thompson* v. *Harding* (2 El. & Bl. 630), Lord Campbell, C. J., said: " When the executor *de son tort* is really acting as executor, and the party with whom he deals has fair reason for supposing that he has authority to act as such, his acts shall bind the rightful executor and shall alter the property."

The same doctrine is held in *Parker* v. *Kett*, 1 Ld. Raym. 658.

The American cases are to the same effect. In *Waters* v. *Stickney*, (12 Allen (Mass.), 15), it is said that a new decree of probate establishing a later will or codicil would not necessarily avoid payments made or acts done under the old decree while it remained unrevoked.

See also *Peeble's Appeal*, 15 Serg. & R. (Pa.) 39; *Kittredge* v. *Folsom*, 8 N. H. 98; *Stone* v. *Peasley's Estate*, 28 Vt. 716.

In *Steele* v. *Renn* (50 Tex. 467), a question similar to the one now under consideration was passed upon by the Su-

prema Court of Texas, which held that " the title of a pur-
chaser in good faith of land, from a legatee under a will
duly admitted to probate, is not affected by proceedings sub-
sequently instituted and resulting in annulling the will as a
forgery."

Under the English law, by which probate of a will was only
required in reference to personal estate, it might well be that
the devisee of land took no title if the will were afterwards
discovered to be void. But in this country in most of the
States, Louisiana included, probate is required as well of wills
of land as of goods, and the same effect should be given to it
as a judicial act as to the probate of wills of personal estate in
England.

Upon the doctrines and authorities above referred to we are
of opinion that a sale of land, duly made by order of the Pro-
bate Court having jurisdiction, and a conveyance thereof by
the executor of a will duly admitted to probate, while its func-
tions were in full force, to a *bona fide* purchaser for value,
vested the purchaser with a good and valid title, which was not
affected by the discovery of a later will and its admission to
probate and record.

The validity of the title of the Fortiers, under whom the
appellant claims, depends, therefore, on the two questions:
*First*, whether there was any fatal defect in the proceedings and
sale under which their title was derived ; and, *second*, whether
they were purchasers in good faith.

We have already seen that the proceedings and sale took
place within the year after the appointment of the executor.
and that it was competent for the court to order the sale by
reason of the absence from the State of the universal legatee
named in the will of 1811.

The appellee contends that there were fatal defects in the
proceedings and sale which rendered the title of the purchasers
void.

*Firstly*, it is said that there was no order for the sale of the
property in dispute, or rather that the order of sale made by
the Probate Court did not include it.

There is little ground for this objection. The petition was
for leave to sell all the property of the succession, movable

and immovable, and the order directed a sale accordingly. There is no dispute, in fact it is the basis of the appellee's title, that the property sold was the property of the succession, and before the sale took place an inventory was filed in which the property in dispute was returned as belonging to the succession.

There can be no question, therefore, that the order of sale included the property which is the subject of this controversy. But it has been expressly held by the Supreme Court of Louisiana that a purchaser of land at a probate sale, under the order of a court of competent jurisdiction, directing a sale of *all* the property of the succession, is not affected by the failure of the executor to have such land placed on the inventory, or to have it accurately described in the inventory.  *Mitchell* v. *Levi*, 23 La. Ann. 630.

It is said, *secondly*, that the sale was not preceded by the advertisements required by law ; and, *thirdly*, that the inventory of the property of the estate, in which was included the premises in controversy, was not made until after the order of sale, and that the part of the inventory which included them was not made by the two appraisers appointed by the parish judge, but by appraisers chosen by the testamentary executor, and it was only signed by one of them.

There is evidence in the record tending to show that the sale was duly advertised. The executor's conveyance recites that the sale was made after " the publications and delays prescribed by law ; " and the account of the executor, which had been of record in the Probate Court for more than fifty years, shows that he paid for advertising the sale the sum of $232.

As possession had been held under the deed for over sixty years, its recitals are evidence even against strangers. *Carver* v. *Jackson*, 4 Pet. 83. And it has been held by the Supreme Court of Louisiana that the account of an executrix recorded in the Probate Court is competent evidence to prove the advertisement of a sale.  *Woods* v. *Lee*, 21 La. Ann. 505. The account was subject to exception. It passed under the scrutiny of the Probate Court, whose duty it was to ascertain the balance due upon it to the heir, and render a final judgment

therefor.   Civil Code, arts. 1183, 1184.   It was, therefore, necessary for the court to allow or disallow the item charged for advertising the sale.   As this item remains in the account as recorded, it may be presumed that it was allowed by the court, and after it has been of record for over fifty years, as in this case, may be considered as competent evidence to prove that the advertisement of the sale was made.

This evidence, uncontradicted as it is, is sufficient to prove the fact of the advertisement.   But whether this is so or not is immaterial ; for on March 10, 1834, an act of the legislature of Louisiana was passed, the second section of which declares : " When a question shall arise out of any public sale heretofore made by the sheriff, auctioneer, or other public officer, and which sale was required by law to be preceded by advertisements, the fact of sale being proved, it shall make *prima facie* evidence that the required advertisements were regularly made."

And this section has been continued in force to the present time.   See Voorhies's Revised Statutes, 1876, p. 867, sect. 3391.   But even if it were affirmatively shown that there had been no advertisement of the sale, that defect, as well as the alleged irregularities in regard to the inventory, is cured by the rule of prescription established by the fourth section of the said act of March 10, 1834, which is as follows : " All informalities connected with or growing out of any public sale made by a sheriff, auctioneer, or other public officer, shall, after the lapse of five years from the time of making the same, be prescribed against by those claiming under such sales, whether they be minors, married women, or persons interdicted."

This section continued in force until 1870.   It was then substantially re-enacted by the general provision contained in the Revised Statutes of 1870, sect. 3392, p. 659, and by art. 3543 of the Civil Code published in the same year, which declares as follows : " All informalities connected with or growing out of any public sale made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women, or interdicted persons."

This section is still in force. Voorhies's Revised Statutes, 1876, sect. 3392.

To entitle a party to claim the benefit of this provision of this or any other prescription, it is made necessary by the jurisprudence of Louisiana that he should have acquired the immovable in good faith and by a just title. By the term "just title," in cases of prescription, is not meant that which has been derived from the true owner, but that which has been received from any person whom the possessor honestly believed to be the true owner, provided it were such as to transfer the ownership of the property; that is, such as by its nature would have been sufficient to transfer the ownership if it had been derived from the real owner, such as a sale, exchange, legacy, or donation. Arts. 3484 and 3485 Civil Code; *Pike* v. *Evans*, 94 U. S. 6.

The deed of Relf, executor, to the purchasers falls within the category above mentioned, or, in the language of the civilians, it is translative of property. There is no defect upon the face of it. The only questions, therefore, which arise upon the prescription of five years declared by sect. 4 of the act of March 10, 1834, and its substitute, art. 3453 of the Civil Code, are, Were the Fortiers purchasers in good faith; and are the defects in the title, insisted on by the appellee, such informalities as are cured by that prescription?

The good faith of the purchaser must be presumed until the contrary is shown. *Packwood* v. *Richardson*, 1 Mart. N. S. (La.) 410; *Fletcher* v. *Cavalier*, 4 La. 267; *Rivarde* v. *Rosseau*, 7 La. Ann. 3; *Leduf* v. *Bailly*, 3 id. 8.

There is not a scintilla of proof in the record tending to show that the Fortiers, or those claiming under them, had any direct notice of Daniel Clark's will of 1813, or that the will of 1811, under which the sale was made, was not his last will and testament.

The appellee relies on the fact, which she claims the testimony proves, that there was a general report in New Orleans, then a small town, that the will of 1811 was not the last will of Daniel Clark.

Even if the evidence established this fact, it is entirely too vague and inconclusive as a ground for creating or destroying

valuable rights. But it fails signally to establish any such general report, or to show that the Fortiers resided in New Orleans, where, if such report existed, it might possibly have come to their ears.

The only other fact relied on to prove the bad faith of the purchasers was the fact that De La Croix, on Aug. 18, 1813, following the filing in the Probate Court of the will of 1811, filed in the same court his petition under oath, in which he stated that he had strong reasons to believe, and did believe, that the late Daniel Clark had made a testament or codicil posterior to that which had been opened before that honorable court, and in the disposition whereof he thought he was interested. And the petition prayed that, " whereas the double of this will, whose existence was known to several persons, might have been deposited with any notary public of this city, an order might be made that every notary of the city appear before the court within the delay of twenty-four hours, to certify on oath if there does or does not exist in his office any testament or codicil or any sealed packet deposited by the said Daniel Clark."

The order was made according to the prayer of the petition. Nothing came of it. No subsequent will was found by reason of the steps suggested by the petitioner.

This petition proved that De La Croix had notice of the will of 1813. It was so held by this court in *Gaines* v. *De La Croix*, 6 Wall. 719. But it proved nothing else. It fails utterly to show any bad faith on the part of the Fortiers. There is not the slightest evidence that either of them ever heard of the petition, or that a rumor of the existence of a will later than that of 1811 ever came to their knowledge.

There is an absolute failure of proof to establish any bad faith on the part of the purchasers of the property in dispute. They acted as if they believed that they were getting a good title to the property; for they agreed to pay, and did pay, what at that time was an immense sum of money for it, to wit, $120,000.

The good faith of the Fortiers being beyond question, they and those claiming under them have the right to rely upon the

prescription of five years to cure any irregularity in the proceedings which resulted in the sale.

That want of advertisements of the sale is such an irregularity as falls within the prescription was held in the cases of *Woods* v. *Lee*, 21 La. Ann. 505; and *Pasiana* v. *Powell*, id. 584. And it would seem that when property was sold at public sale, and as in this case brought its full value, the want of previous advertisement was a very immaterial matter.

The other alleged defects in the proceedings clearly fall within the prescription of five years. The fact that the inventory of the estate was not completed before the order of sale, the fact that the inventory was partly made by appraisers appointed by the testamentary executor, and that it was signed by only one of two who were so appointed, are certainly most trifling and inconsequential irregularities when there is no proof or even charge that the inventory was not fairly made or the sale fairly conducted, and when the property sold brought its full value. If these irregularities do not fall within the prescription of five years, it would be hard to conceive of any that would. *Fraser* v. *Zylicz*, 29 id. 534.

The irregularities in the sale alleged by the appellee are, therefore, cured by the lapse of five years, and can have no more influence on the title of the appellant than if they never existed.

We find, therefore, that the appellant derives her title under a public sale made by a public officer by authority of the order of the Probate Court; that the sale took place, and the deed, which on its face was without defect and was translative of property, was made by the executor within the year following his appointment; that the purchasers purchased in good faith for a full consideration; and that there were no nullities or informalities in the sale which have not been cured by the prescription of five years.

In the cases heretofore decided by this court in favor of appellee, except *Gaines* v. *De La Croix*, the defendant claimed title from Relf, or Relf and Chew, executors of the will of 1811, under private sale, made by them as agents of Mary Clark, devisee under that will, and in their pretended capacity as executors, after their term of office had expired, and

without any order of court.   See *Gaines* v. *New Orleans*, 6 Wall. 642.

In the case of *Gaines* v. *De La Croix*, the court decided, and on most satisfactory proof, that De La Croix was a purchaser in bad faith, and upon that ground his title was declared invalid.

In her bill in this case the appellee, knowing that it was a vital fact in her case, charged that the sale of Relf, the executor, to the Fortiers was made after the expiration of a year from the date of his appointment and at a time when he had no authority to sell.   But, as the proof shows, that averment is not true.   The record shows that Relf was appointed executor Aug. 27, 1813, and the sale was made on November 8 following, under an order of court, and the conveyance three days later, on November 11.

Upon the facts of the case, therefore, the title derived by the appellant under the sale to the Fortiers appears to be a good and valid title.

But conceding that the title acquired by the Fortiers at the sale made by the register of wills was void, should there be a decree in favor of the complainant, establishing her title to the lands in question, and placing her in possession, until she has returned or tendered the money which the Fortiers paid on their purchase?   This inquiry presents the second ground of defence relied on by appellee.

Clark bought the property for $120,000, wholly on credit, and gave a mortgage on it to secure the purchase-money.   It was sold for the same price to the Fortiers, who purchased in good faith.   Every cent of the purchase-money was applied to the extinguishment of the mortgage executed by Clark, and for which his estate was liable.   No repayment or tender of this sum or any part of it is averred in the bill.   Upon this state of facts, we do not think the complainant is entitled to a decree.

To allow the heir or the devisee of a mortgagor, under the circumstances of this case, to recover the property without repaying the money for which it had been sold, and which had been paid by a *bona fide* purchaser, and had been applied to clear the property of a mortgage which rested upon it, and for

which the estate of the mortgagor was bound, would be most inequitable and unjust. It would be an utter disregard of the rule that they who seek equity must do equity. No support for such a decree can be found in the adjudged cases.

On the contrary, in *Scott* v. *Dunn* (1 Dev. & B. (N. C.) Eq. 425), it was held that where an executor sold lands and applied the proceeds to the payment of the debts under a mistake of his power, and the purchaser was evicted by the devisee, the land in equity would be subjected to indemnify the purchaser to the extent to which the purchase-money was applied to the payment of the debts over and above the personal estate.

So in *Valle* v. *Fleming's Heirs* (29 Mo. 152), it was held that when land is purchased in good faith at an administrator's sale, which is void because the requirements of the statute are not pursued, and the purchase-money is applied in extinguishment of a mortgage to which such land was subject in the hands of the owner, the purchaser will be subrogated to the rights of the mortgagee to the extent of the purchase-money applied in the extinguishment of the mortgage, and the owner will not be entitled to recover possession until he repays such purchase-money.

To precisely the same effect are the cases of *Blodgett* v. *Hitt*, 29 Wis. 169, and *Hudgin* v. *Hudgin*, 6 Gratt. (Va.) 320. See also *Mohr* v. *Tulip*, 40 Wis. 66; *Grant* v. *Lloyd*, 22 Miss. 191; *Short* v. *Porter*, 44 id. 533; *Haynes* v. *Meeks*, 10 Cal. 110. And see Freeman on Void Judicial Sales, sect. 51, where the authorities on this question are collected and discussed.

The views held in the cases above referred to are sanctioned also by the jurisprudence of Louisiana. Thus, in *Barelli* v. *Gauche* (24 La. Ann. 324), it was held that an action to annul a judicial sale of real property on the ground of irregularities in the proceedings cannot be maintained against the purchaser, unless the parties claiming its nullity have paid or offered to reimburse the purchaser the amounts of the mortgages resting on the property, which he has paid since the purchase. A tender of the amounts thus paid is an essential prerequisite to the prosecution of a suit to annul.

So in *Davidson* v. *Davidson* (28 La. Ann. 269), it was held that a sale made by an administrator to pay debts " could not be disturbed unless the heirs previously returned or offered to return the price of the adjudication."

In *Jouet* v. *Mortimer* (29 id. 207), the court said : " Nothing could be more unjust than to permit a debtor to recover back his property because the sale is irregular, and yet allow him to profit by that irregular sale to discharge his debt."

See *Coiron* v. *Millaudon*, 3 id. 664; *Seawell* v. *Payne*, 5 id. 255 ; *Barret* v. *Emerson*, 8 id. 503; also *Dufour* v. *Camfranc*, 11 Mart. (La.) 607.

The same rule prevailed in the civil law. It was said by Mr. Justice Story, in *Bright* v. *Boyd* (2 Story, 478) : " There is still another principle of the Roman law which is applicable to the present case. It is, that where a *bona fide* purchaser of real estate pays money to discharge any existing incumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him."

See also Dig., lib. 6, tit. 1, l. 65 ; Pothier, Pand., lib. 6, tit. 1, n. 43; Pothier, De la Propriété, n. 343.

The authorities cited settle conclusively the proposition that the complainant is not entitled to the decree she seeks without repayment or tender of the purchase-price of the lands in controversy, which has been applied to the extinguishment of a mortgage thereon.

No case is cited by counsel for appellee where the court refused to give a purchaser in good faith the benefit of this rule. The authorities relied on by him (Sugden on Vendors, c. 16, p. 483; 3 Atk. 287) apply only to purchases in bad faith.

We are aware that it has been held that a purchaser at an irregular or void judicial or execution sale is not subrogated to the rights of the judgment creditor. *Richmond* v. *Marston*, 15 Ind. 134.

The weight of authority is, however, against this position. *McLaughlin* v. *Daniel*, 8 Dana (Ky.), 182; *Bentley* v. *Long*,

1 Strobh. (S. C.) Eq. 43 ; *Howard* v. *North,* 5 Tex. 290 ; *Jackson* v. *Bowen,* 7 Cow. (N. Y.) 13. And this court has expressly held that an irregular judicial sale, made at the suit of a mortgagee, even though no bar to the equity of redemption, passes to the purchaser at such sale all the rights of the mortgagee as such. *Brobst* v. *Brock,* 10 Wall. 519.

But it is not necessary for the appellant to stand upon the doctrine of subrogation. She is in possession, and ought not to be deprived thereof upon a proceeding in equity, unless the complainant offers to do equity. What we decide on this branch of the case is this : when the, purchase-money paid by a purchaser in good faith, of real estate of a decedent ordered to be sold by a Probate Court, has been applied to the extinguishment of a mortgage executed by the decedent upon the property sold, and constituting a valid incumbrance thereon, and it turns out that the sale is irregular or void, the purchaser cannot be ousted of his possession upon a bill in equity filed by the heir or devisee, without a repayment or tender of the purchase-money so paid and applied.

As the points already decided are conclusive of the case, it is unnecessary to express any opinion on the third defence set up by the appellant ; namely, the prescriptions of ten, twenty, and thirty years declared by the Civil Code of Louisiana.

The litigation of which this case forms a part has been before this court in various forms in the following cases : *Ex parte Myra Clarke Whitney,* 13 Pet. 404 ; *Gaines* v. *Relf,* 15 id. 9 ; *Gaines* v. *Chew,* 2 How. 619 ; *Patterson* v. *Gaines,* 6 id. 550 ; *Gaines* v. *Relf,* 12 id. 472 ; *Gaines* v. *Hennen,* 24 id. 553 ; *Gaines* v. *New Orleans,* 6 Wall. 642 ; *Gaines* v. *De La Croix,* id. 719 ; *New Orleans* v. *Gaines,* 15 id. 624 ; *Gaines* v. *Fuentes,* 92 U. S. 10.

We think the facts of this case distinguish it from all the cases above mentioned, and our opinion is, that upon the averments made in this bill, and the evidence adduced to support it, the appellee, Mrs. Gaines, is not entitled to a decree against the appellant. So much, therefore, of the decree of the Circuit Court as relates to the property bought by Michel Fortier and Omer Fortier, and now claimed by the widow and

heirs of Minor Kenner, deceased, must be reversed, and the cause remanded with directions to dismiss the bill, so far as it concerns the appellant.

*So ordered.*

MR. JUSTICE MATTHEWS took no part in the decision of this case.